CRESWELL'S Lessee, *vs.* STEPHEN LAWSON, Dec. 1835.

S conveyed to C several parcels of property by the same deed, viz: 1st, All that piece or parcel of ground lying in B city, which R conveyed to S, and contained within the following metes and bounds, &c. 2nd. Also, all those two lots or parcels of ground situate in the S. E. addition to B city, distinguished on the plat thereof by the numbers, &c. and which H conveyed to S, and three other distinct parcels of land lying in B county, described by course and distance, &c. C by his last will devised to M as follows : "All two lots, pieces, or parcels of ground situate in and near the city of B, which were heretofore conveyed to me by S, as will appear by the above conveyance, particularly referred to in his will." The bequest was made to M in trust for the widow and daughters of S, "only upon condition that he (M) or they (the heirs of S,) pay unto my executors such sum as shall be found due my estate by S, deceased." In an action of ejectment brought by the heir at law of C, for the recovery of the parcel of land first mentioned in the deed from S to C—it was held, that two, and two only of the six pieces of ground conveyed by S to C, passed under C's will, that those

were the two lots situate in the S. E. addition to B city; that no right of election was given by the will, and that the payment of the sum due from the estate of S to C, was not a condition precedent to the vesting of the title to the two lots aforesaid.

Whether a condition annexed to a devise is a condition precedent or subsequent, is a question that does not depend upon the order in which the words creating the condition stand in the will; but upon the order of time in which it is required to be performed, according to the intention of the testator, to be collected from the whole of the will, respect being had in looking for that intention to the subject matter of the devise, and the nature and object of the condition.

No precise technical words are necessary to the creation of a condition precedent or subsequent, either in a will or deed, but the same words may be construed to operate either as the one or the other, according to the evident sense in which they are used, as indicated by the instrument.

So where property was devised only upon condition, that the devisees should pay a debt claimed by the testator, and there was no contingent limitation over of the property devised, in case of a failure to pay the debt—the debt claimed not being a creature of the will, existing and being recoverable without its aid—and the acceptance of the devise making the debt a charge upon the land devised, and that the testator had not made any intermediate disposition of the rents and profits, or use of the property as a means of procuring payment of his debt before any interest should vest, are all circumstances indicating the testator's intention not to create a condition precedent.

The right of election may be given by will, either expressly or by implication.

A right of election is implied where it is necessary to give effect to a devise, and where there is evidence in the will to show that the testator was indifferent as to what selections were to be made by his devisee; but it is not implied in cases of patent ambiguity, or where there is nothing indicating the intention to give the right, or where by an attempt at description (though erroneous,) the testator points to the specific property he intended to devise.

The heir being favoured in law, there should be no strained construction to work a disherison where the words are ambiguous.

Where the intent of a testator is apparent, no word shall be added or rejected, to defeat such intention which must prevail if it does not violate some settled principle of law.

Where the intention of a testator is ascertained, a word manifestly omitted by mistake as "all two lots," instead of "all those two lots," may be added to carry into effect that intent.

Where the description of the thing intended to pass is otherwise sufficiently certain, the addition of a circumstance false or mistaken, or of a subsequent defective description, will not violate the correct description or frustrate the grant or devise.

So where two lots were granted by a certain description "with the premises thereon" and in fact there were no improvements on them, this will not violate the grant.

APPEAL from *Baltimore* County court.

*Ejectment* for a tract or parcel of land lying in the city of *Baltimore*, called " *Cole's Harbour*, " commenced by *John Creswell, the younger*, in his life time on the 23d of November, 1830, and continued by his widow and devisee after his death.

The defendant took defence on warrant, and pleaded not guilty.

At the trial it was admitted by the defendant, that the land and premises for which the action was brought, were a part of " *Cole's Harbour*," for which a patent was duly granted on the 4th *September*, 1668. It was also admitted, that *William Slater* prior to, and upon the 24th May, 1810, was in possession of the said land and premises, and seized thereof—and the plaintiff then read in evidence a deed from said *Slater*, to *John Creswell, the elder*, bearing date on that day, by which in consideration of the sum of $12,000, the former conveyed to the latter and his heirs, the following described property, that is to say—" all that piece or parcel of ground lying in *Baltimore town*, now city, which *Robert Slater* by indenture, &c. conveyed to the said *William Slater*, and which is contained within the following metes and bounds, courses and distances, beginning," &c. describing it by course and distance : "also all those two lots or parcels of ground situate in the south east addition to *Baltimore* town (now city) distinguished on the plat thereof by the numbers 23 and 686, which *George Hussey* by indenture, &c. conveyed to the said *William Slater* ; " " also that part of a tract or parcel of land, lying and being in *Baltimore* county, called " *Cole's Harbour* " or " *Todd's Range* " which *Samuel Smythe* by indenture, &c. conveyed to the said *Willam Slater*," and describing it by metes and bounds, course and distance—" and all that lot or parcel of ground, lying in the county aforesaid, being part of a tract of land called *Darley Hall*, and distinguished on the plat thereof by the number 58, which *John Fanner* conveyed to the said *William Slater* ; " " also all that piece or parcel of ground and premises, that is

situate, lying and being in *Baltimore* county aforesaid, containing four acres or thereabouts," &c.

And the plaintiff further proved, that the said *John Creswell* died about the year 1814, leaving *John Creswell, the younger,* the reputed son of the first named *John Creswell.* That the elder *Creswell* was reputed to have married the mother of *John Creswell, the younger,* when the latter was about twelve years old. That after the said reputed marriage, *John Creswell, the elder,* and the mother of *John, the younger,* lived together as man and wife, and that the former always acknowledged the latter to be his son.

That the said *John Creswell, the younger,* was the original lessor of the plaintiff in this case; that he survived his mother *Elizabeth Creswell,* and himself died some time in the year 1831, aged about 28 years; and it was admitted, that the said *John Creswell, the younger,* devised all his property, real, personal and mixed, to *Rebecca E. Creswell,* his wife, who is the present lessor of the plaintiff.

The will of *John Creswell, the elder,* was then read in evidence by the defendant, in which is the following clause—
" Item, I do hereby devise and bequeath unto *Alexander McKim,* of the city of *Baltimore* and *State of Maryland,* all two lots, pieces or parcels of ground, with the premises thereon being, situate, lying and being in and near the city of *Baltimore,* which were heretofore, on or about the 24th day of May, 1810, conveyed to me by *William Slater,* merchant of the city of *Baltimore,* as will appear by said deed, duly executed, acknowledged and recorded, among the land records of Baltimore county court, in *Liber W. G. No.* 110; to have and to hold the same to him, his heirs and assignees for ever. In trust nevertheless, for the sole and separate use of *Mrs. Hannah Slater,* widow of *William Slater,* merchant, for and during the natural life of her, the said *Hannah Slater,* and after the death of her, the said *Hannah Slater,* for the sole and separate use and benefit of *Rebecca,* wife of *John Roy, Lydia Ball Slater,* and *Ann Sharp Slater,* all children of *Mrs. Hannah Slater,* as tenants in common, and not as joint

tenants. Item, I give and bequeath the foregoing lots of ground described as aforesaid, unto *Alexander McKim*, for the use of *Hannah Slater*, and heirs as aforesaid, only upon condition that he, or they, pay unto my executors such sum as shall be found due my estate from *William Slater*, deceased, aforesaid, any thing that may appear to the contrary notwithstanding.

This will was executed by the testator on the 17th of February, 1814, and proved on the 18th of April of the same year.

And the defendant proved by the exhibition of certain proceedings in the Chancery Court of Maryland, he had been appointed trustee in the place of the trustee *McKim* named in the will.

Evidence was then offered to prove that the devisees mentioned in the preceding clause of *Creswell's* will, had elected to take other property, than that involved in this action ; to resist the right that the defendant might set up, founded upon the supposition, that such right of election was conferred by the testator ; but as this court decided, that no right of election was given, it is deemed unnecessary to introduce the evidence.

The defendant then moved the court to instruct the jury, that the plaintiff was not entitled to recover.

1st. Because there is no evidence that *John Creswell, the the younger*, was the legitimate son, and heir at law, of *John Creswell, the elder*.

2nd. Because the payment of the debt from *William Slater*, to *John Creswell, the elder*, mentioned in the will of *John Creswell, the elder*, is not a condition precedent to the vesting of the title under the devise to *Alexander McKim* in trust, contained in the said will.

3rd. Because the true construction of the said devise to *Alexander McKim* in trust is, that the whole of the lots conveyed to *John Creswell, the elder* by *William Slater*, by the deed therein referred to, are devised to the said *McKim* in trust for the purposes therein mentioned, without the impediment of any condition precedent.

4th. Because if the construction given to the said devise in the last reason, be not the true one, then the true construction is, that two of the lots conveyed by said *Slater* to *John Creswell, the elder*, by the deed in the devise referred to, pass under the said devise, without the impediment of any condition precedent, and that the defendant hath a right to elect which two of the said lots he will; and hath sufficiently declared his election of the lot in the declaration mentioned, as one of said two lots.

5th. Because it is not necessary, to the exercise of the right of election, vested in the defendant, in order to entitle himself to the lot in the declaration mentioned, that he should confess a judgment in any action brought against him, for any of the other lots mentioned in the deed from Slater to Creswell.

Which prayer, the court (*Archer, Ch. J.*) refused to grant, but informed the jury, that there was evidence of the legitimacy, and heirship of *John Creswell* to go to the jury. That according to the will of the *elder Creswell, McKim* as trustee for the children of *Slater*, was entitled to any two lots he might elect to take, of those embraced in the deed, and that without showing the payment of the debt referred to in said will. That the defendant might make his election at the bar pending the trial of the cause, and might say which two lots he would elect to take, but that while this was permitted, they must abandon all right to the other two lots under this will, and that no efficacy should be given to their said election, unless they abandoned the defence of the suits instituted for the said lots by the plaintiff, which they did not elect to take.

Both parties excepted to the instruction given by the court to the jury. The verdict and judgment was for the defendant, and an appeal prayed by each party to the Court of Appeals; but the defendant subsequently dismissing his appeal, the cause came on to be heard, on the appeal of the plaintiff, before ·

BUCHANAN, Ch. J. and STEPHEN, DORSEY and CHAMBERS, Judges.

JOHNSON, and LLOYD for the appellant contended.

1. That under the will of the *elder Creswell*, the payment to the testators, executors of such sum as was due to his estate by *William Slater*, deceased, was a condition precedent, and that nothing vested in *Alexander McKim*, the trustee, nor in the *cestui que trusts* till such payment. *Watchman & Bratt vs. Crook*, 5 *Gill and Johns.* 255. 1 *Term Rep.* 645. *Acherly vs. Vernon, Wills. Rep.* 157, *note.* 2 *Black. Com.* 154. *Acherly vs. Vernon, Wills Rep.* 153, 161. *Jarrett's Lessee vs. Conly*, 6 *Harr. and Johns.* 259.

2. If, however, the payment of the money should not be considered as a condition precedent, still the devise in question is void for uncertainty. The deed from *Slater* to the testator must have been before him when he prepared the will, as is manifest from the particularity with which he refers to it; it is therefore a part of the will—*Powel Dev.* 49. *Habugham vs. Vincent*, 2 *Ves.* 228. And yet, though there are several pieces of property to which the description employed would not be inapplicable, there is nothing by which it can be known with any degree of certainty, which the testator designed to give. *Richardson vs. Watson*, 24 *Eng. C. Law Rep.* 164. When this is the case, the heir at law will not be deprived of his inheritance. *Thomas, Lessee vs. Turvey*, 1 *Harr. and Gill* 435. *Powel on Dev.* 411. *Thomas ex dem vs. Thomas*, 6 *Term Rep.* 677. *Good title ex dem Richardson vs. Edmond*, 7 *Ib.* 640.

3. But if the devise is not void for uncertainty, then those lots, to which the description is most appropriate shall pass, and they are the two " in the *south-east* addition to *Balti-timore.*" *Ashforth vs. Bower*, 23 *Eng. C. L. R.* 119.

The right of election was not given, because of the inapplicability of the description in the will, to the subjects out of which the election is proposed to be made. *Ashforth vs. Bower*, 23 *Serg. and Lowb.* 119. If the testator had given a portion out of a mass of property, without saying out of what part of the whole the part given should be taken, there would have been an election. But that is not the case here—The

deed which must be regarded as a part of the will, describes the different pieces of property separately and distinctly, and the testator says he means to give a specific portion of the property so described.    The doctrine of election never applies except where the devise would otherwise be void for uncertainty ; nor does it ever apply when the thing out of which it is made consists of distinct portions, unless the whole are mentioned, and there is nothing to show which was intended to be given.    4 *Bac. Maxims* 79.    *Richardson vs. Watson,* 24 *Serg. and Lowb.* 164.    Here the whole were not mentioned, but only a part, and that in terms from which the intention of the testator may be fairly inferred.

4. If the testator however designed to give the right of election, it has already been exercised, and cannot be re-exerted in the manner attempted in this case ; nor could it be made after the death of *McKim* the trustee, named in the will.    The right of election in this case, if one existed, was not to take by one of two titles, but one of two things, and when the latter is the case, its right must be exerted in the life-time of the party authorized to make it.    *Hayward's case,* 2 *Coke* 35, 36 (*a*).    *Vandenburg vs. Van Bergen,* 13 *Johns. Rep.* 212.    *Jackson ex dem vs. Van Buren, Ibid.* 525.    *Coke Lit.* 145 (*a*).    2 *Bac. Abr.* (*election*) 444.

Evans and Mayer for the appellee.

1. According to the true construction of the will, all of the lots contained in the deed from *Slater* to the testator passed. There is no pretence for saying that the devise is void for uncertainty.    If absolute certainty was required in every devise, cases growing out of the true construction of wills would never arise, and the fact of the multitude of such cases and the doubts and difficulties, which have frequently perplexed the courts, in arriving at their true meaning, shows conclusively that such entire certainty is not necessary.    If the rule was, as is contended for on the other side, the courts instead of endeavouring to arrive at their true construction, would have dismissed them all, by suggesting the doubt,

and the pronouncing the wills void for uncertainty. But instead of doing this, they task their ingenuity, and penetration, to discover the true intention of the testator. 4 *Danes Abr.* 600. 8 *Viners Abr. title Devise* (d) 19. *Richardson vs. Watson,* 24 *Serg. and Lowb.* 166.

The regard which it is said the courts feel for the heir at law, only arises, when the question relates to the *quantity* of benefit claimed for the devisee. When the doubt is, as to the *identity* of the thing given, such regard is not entertained, and more especially is this the case, when the will as in this case, makes special provision for the heir. 8 *Viner, Devise,* (d) 15, 19, 22. *Miller vs. Travers,* 21 *Serg. and Lowb.* 290. *Thelluson vs. Woodford,* 4 *Ves. Jr.* 329. *Leigh vs. Leigh,* 15 *Ves.* 103. *Doe ex dem Humphrey vs. Roberts,* 7 *Serg. and Lowb.* 150. 2 *Term,* 499. *Doe ex dem Hick vs. Dring,* 2 *Maule and Selw.* 454. 2 *Preston on estates,* 160, 196. *Powel on Devises,* 279. *Doe ex dem Michaud vs. Crawford,* 3 *Halsted* 97.

The denomination used by the testator, applies to the whole property, and consequently the whole passes. 6 *Cruise. Devise, ch.* 10, *Sec.* 54. The word "two," is to be rejected, as unnecessary. If the testator had said, "all the lots, which are two," there can be no doubt, that all would have passed, and the words used, are in effect the same. 2 *Burr. Rep.* 1092. *St. John vs. Bishop of Winton, Cowper* 94. *Mosley vs. Massey,* 8 *East* 149. *Goodright ex dem Lamb vs. Pears,* 11 *East,* 58. *Marshall vs. Hopkins,* 15 *East,* 309. *Good title ex Radford vs. Southern,* 1 *Maule and Selw.* 299. *Down vs. Down,* 2 *Serg. and Lowb.* 130. *Doe ex dem Humphreys vs. Roberts,* 7 *Ib.* 150. *Doe ex dem Newton vs. Taylor,* 14 *Ib.* 56. *Doe ex dem Gore vs. Langton,* 22 *Ib.* 166. *Ashforth vs. Bower,* 23 *Ib.* 119. *Jackson vs. Clark,* 7 *Johns. Rep.* 223. *Jackson vs. Loomis,* 18 *Ib.* 84. *Loomis vs. Jackson,* 19 *Johns. Rep.* 450. *Doe vs. Roe,* 1 *Wend.* 547. *Dorsey vs. Hammond,* 1 *H. and J.* 193, 201. *Hammond vs. Ridgely,* 5 *H. and J.* 246. *Buchanan's Lessee vs. Stewart,* 3 *H. and J.* 329.

2. If this construction is not the sound one, still two lots passed under the devise, to be taken at the election of the devisee. There is nothing to show that the testator meant any two lots in particular, the deed to which he refers embracing more than two, and that reference being made, not for the purpose of designating which two were designed to be given, but for the purpose of indicating by what title he held, and the mass out of which the selection was to be made. 2 *Bac. Abr.* 441, title *Election.* *Powel on Devises,* 283. 8 *Viner, Devise* (*d*) *Pl.* 11. *Richardson vs. Watson,* 24 *Serg. and Lowb.* 164, 165. *Habugham vs. Vincent,* 2 *Ves. Jr.* 228. *Hayward's case,* 2 *Coke* 36, (*b*). 2 *Ship. Touch.* 250, 433. *Hunt and Parks vs. Gist,* 2 *H. and J.* 498.

3. That the right of election had not been forfeited, in any way, and was duly exercised in this case. 2 *Coke* 36. *Hunt and Parks vs. Gist,* 2 *H. and J.* 498. 2 *Bac. Abr.* 442. 2 *Viner, Election,* (*c*) *Pl.* 13.

4. The condition annexed in the devise, is a subsequent condition, and its antecedent performance not necessary to the vesting of the estate. 1802, *ch.* 94, *Sec.* 2. 5 *Viner's, Condition,* (*t*) 16. 44. *Taylor vs. Mason,* 9 *Wheat. Rep.* 325. *Powel on Dev.* 248. The primary object of the testator, was to confer a bounty on the *Slater* family. The second, to secure the debt due from *William Slater* to his estate, and both these objects are best accomplished, by construing the condition, a subsequent one.

It seems perfectly apparent, that the testator designed, that the devise should take effect at the moment of his death, which could not be, if the payment of the debt is a condition precedent; because at that time, the amount of the debt had not been, and could not have been ascertained. Nay, if the thing devised, should exceed in value the amount of the debt, it would be the interest of those, who alone knew the amount, to conceal it from the devisee, in which case, if it be a condition precedent, the devise must fail altogether.

These questions always depend uvon intent, and the

courts incline to construe such conditions, as subsequent. *Avelyen vs. Ward*, 1 *Ves. Sr.* 420. 1 *Term.* 645. *Finlay et al vs. Kings Lessee*, 3 *Peters. S. C. R.* 374. *Taylor vs. Mason*, 9 *Wheat*, 325. 1 *Powel on Devises*, 248. *Hunt and Parks vs. Gist*, 2 *H. and J.* 498. *Jarrets Lessee vs. Cooly*, 6 *H. and J.* 259. *Thomas Lessee vs. Turvey*, 1 *H. and G.* 435.

BUCHANAN, Chief Judge, delivered the opinion of the court.

A variety of questions have been raised in this case.

1. Whether the devise in the will of *John Creswell*, the elder, to *Alexander McKim*, in trust for the use of *Hannah Slater* for life, and after her death, for the use and benefit of *Rebecca*, wife of *John Roy*, *Lydia Ball Slater*, and *Ann Sharp Slater*, children of *Hannah Slater* is void for uncertainty?

2. If not void for uncertainty, whether the property devised, is designated with sufficient certainty, to ascertain the particular lots intended to be given; or whether a right of election was given, as out of a designated mass, from which the subject of the devise was to be taken?

3. If a right of election was conferred, whether that right has been exerted, in a manner authorized by law, by a person having authority to make the election?

4. Whether, if there has been such an election, it was made in due time?

5. Whether the title to the property devised, vested in the devisee before election, so as that a suit instituted before, could be defeated by an election made at the time?

6. Whether the devise to *McKim* for the purposes of the trust, did or not operate to pass the whole of the property conveyed, to the testator, *John Creswell, the elder*, by the deed from *William Slater* to him, therein referred to;—And,

7. Whether the payment of the debt due from *William Slater*, which is annexed as a condition to the devise, is or not a condition precedent to the vesting of the title under the devise?

The conveyance from *William Slater*, to the testator, *John Creswell, the elder*, referred to in the will, is of premises designated in five separate and distinct clauses in the deed. The action was brought for, " the piece or parcel of ground lying in *Baltimore* town," designated in the first of these clauses of the deed from *William Slater* to the testator, *John Creswell, the elder ;* which is resisted upon the hypothesis, that either the whole of the premises conveyed by the deed, passed by the will of *John Creswell, the elder*, to *McKim*, for the purposes of the trust, or if only two lots passed, then that the right of election devolved under the devise upon *McKim* in the first instance, and afterwards upon *Lawson*, the substituted trustee, and defendant in the action.

The title of the testator, *John Creswell, the elder*, to the premises in question, is not disputed ; and the lessor of the plaintiff claims as devisee of *John Creswell, the younger*, who was the heir at law of the testator, *John Creswell, the elder*.

A great deal of legal research has been brought into the argument of this cause, with thought, ingenuity, and professional skill, spread over an extensive range of legal learning. And the case at first view is not without some difficulty.    If the whole of the property, conveyed by the deed of the 24th of May, 1810, from *William Slater to John Creswell, the elder*, passed under the devise in his will to *McKim* ; or if not the whole, but only two lots or parcels of it passed with the right of election, and the " piece or parcel of ground," for which the suit was brought, has been selected in the due exercise of that right, as one of the two lots authorized to be chosen ; or if two lots and no more passed, which are designated in the devise with sufficient precision to be ascertained. and the lot in controversy, is one of the two so designated ; in either case, the plaintiff can have no right to recover ; unless the payment of the debt, if any, due from *William Slater* to the testator, is to be considered as a condition precedent to the vesting of the title under the devise, which has been so broken, as to leave the title of the heir at law, under whom the plaintiff claims in full force.    Of the payment of

which debt, if there was any thing due, there is no evidence, nor any thing to show an excuse for not paying it; nor any proof in relation to that subject.

Assuming in this part of the case, that two lots, and no more, *were* intended to be devised, and that the description given in the will, is sufficiently exact and certain to pass the lots intended; still, it is not pretended, that the piece of ground for which the action was brought is one of those two lots, there being no designation of it as one of them; nor any thing to be found in the will, from which such an inference can be drawn, under any construction of it. And it is only on the ground, either, that the whole of the property covered by the deed from *William Slater* to *Creswell*, *the elder*, passed under the devise to *McKim*, in *Creswell's* will; or that it passed two lots or parcels of it, which are not designated, with the right to elect to take any two of the several parcels of ground mentioned in the deed; and that this particular piece of ground, has been selected, in the due exercise of that right, that the defence set up, can be sustained against the otherwise conceded title of the plaintiff.

One or the other of those grounds must be maintained, or the defendant must fail in his defence. And even then, if the payment of the sum found to be due to the testator, from *William Slater*, is to be considered as a condition precedent to the vesting of the estate under the devise; there being no evidence or pretence of such payment, or offer to pay it, at any time; nor of any excuse for not making it.

Inverting then, the order of the questions presented in the argument, the first inquiry will be, whether such payment was annexed to the devise as a condition precedent.

In support of the affirmative of this proposition, many authorities were cited; among which, were *Cary vs. Bertie*, &c. 2d *Vernon* 333, and *Acherley vs. Vernon, Wills Rep.* 153, that were chiefly relied upon; but which when examined, will be found not to bear so strongly upon this case, as has been supposed, but to be very distinguishable from it.

Whether a condition annexed to a devise is a condition

precedent or subsequent, is a question that does not depend upon the order, in which the words creating the condition stand in the will; but upon the order of time, in which it is required to be performed, according to the intention of the testator, to be collected from the whole of the will; respect being had, in looking for that intention, to the subject matter of the devise, and the nature and object of the condition. Nor are there any precise technical words necessary to the creation of a condition precedent or subsequent, either in a will or in a deed; but the same words may be construed to operate, either as the one or the other, according to the evident sense in which they are used, as indicated by the instrument. Upon this principle, all the cases are professed to have been decided.

The two cases of *Cary vs. Bertie,* and *Acherley vs. Vernon,* will be briefly noticed, because they have been much relied upon. In the former, *Cary vs. Bertie,* &c. the devise was of the real estate of the testator to trustees in fee, upon trust, to pay what debts and legacies his personal estate should not be sufficient to satisfy, and then in trust for his niece, who was his heir at law, for life, &c. "in case she should within three years after his death be married to *Francis Lord Guilford,*" and "in case such marriage should not take effect within the said three years, then in trust," &c. for another—and afterwards in a codicil, it was provided, "that if the marriage should take effect before years of consent, and should not afterwards be ratified, when she was of competent age," she should have no benefit of the trust, other than she should have had, if the marriage had never been solemnized." The marriage of the niece with *Lord Guilford,* was held to be a condition precedent, on the ground, that by the will, it was plainly the intention of the testator, that she should not have his estate, unless the marriage took effect; *Lord Hale* adding, that the codicil put it beyond doubt. Which is very strong, and almost in terms declares it to be a condition precedent, "that she should have no benefit of the trust," &c. which was almost equivalent to his

having said, that no benefit or interest should vest in, or accrue to her, until the marriage should first have taken place Besides the rents and profits for the three years after the death of the testator, were to be applied to the payment of the debts and legacies; a circumstance, that was seized upon by the *Lord Chancellor*, saying that in the meantime, nothing either descended or vested—which was certainly a very strong circumstance, to shew the intention of the testator to have been, that nothing should ever vest, except upon the contingency of her marrying within the time limited by the will. This case, however, is stated at the foot to have been taken to *the House of Lords*, and there *compromised.* But in note 2 of the report, it is said to have been *reversed* in the *House of Lords*—and in 1*st Salk. Rep.* 231, it is also stated to have been *reversed.* In *Acherley vs. Vernon,* the question arose on the will and codicil of *Mr. Vernon,* who after bequeathing to his sister an annuity for life, to be paid half yearly out of the rents and profits of his real estate, and a legacy to his neice, &c. gave and bequeathed, all his estate, real and personal, to several, in trust for the payment of the annuity and annual rents, before bequeathed to his wife and sister, and other persons, &c. and to settle his estate to other uses therein directed. And in the codicil inserted this clause—"But my mind and will is, that what I have so given to my sister and niece, be by them accepted and taken, in lieu and satisfaction of all they or either of them, might claim out of my real or personal estate, and upon condition, that they release all right and title thereunto, unto the executors and trustees in my will named." The suit was brought for the arrears of the annuity, from the time of the testator's death, by the husband of the sister, as her administrator, she being dead, and never having made the release required by the codicil. And after four several arguments, it was decided, that her giving the prescribed release, was a condition precedent—upon the ground, that it appeared to be the intention of the testator, that it should be so, from the peculiar wording of the clause creating the condition; and

that he intended she should not have the annuity, unless she first performed it.

Those two cases (as all cases must be) were each decided upon their own peculiar circumstances, which were very strong. But neither of them is this case.

In *Cary vs. Bertie*, the interest was not to vest, and could not vest under the devise, on the death of the testator, and was only to take effect on the happening of a specified contingency, within a limited time after his death—and in the meantime, the rents and profits were to be applied by the trustees, to the payment of debts and legacies, shewing the intention of the testator to have been, that his niece should take nothing, except on the happening of the contingency; and if it should not happen, then that the estate should continue in the trustees, for the other trusts created by the will; and that no benefit should ever accrue to her from the trust. And therefore her marrying *Lord Guilford*, was considered as a condition precedent, that being the contingency upon the happening of which, the trust was to inure to her benefit—moreover it was a condition, that there were no means of obtaining a compliance with, otherwise than by making the benefit of the devise, to depend upon the prior performance of it.

In *Acherley vs. Vernon*, the first payment of the annuity, was not to be made on the death of the testator, *Mr. Vernon*, nor until six months after; and it was expressly given, and to be accepted in lieu and satisfaction of all, that his sister might claim out of his real or personal estate, and in consideration of the contemplated release of such claim, without making which, she was not to have the annuity, but the estate was to stand discharged from it. And not that she should receive the annuity, and yet at the same time, be at liberty to dispute the devisee's right to the estate; which it was the object of the condition to guard him against. The annuity was given, and to be accepted in lieu, or as an extinguishment of any claim, she might have upon the estate. To relieve it from such claim, and not to charge it with the

annuity, and leave it at the same time, subject also to the claim. And the release was the consideration, upon the execution of which, the annuity was to be paid. And as a test of the meaning of the testator, and to shew, that he intended the execution of a release, as a condition precedent, the court said, speaking through the *Chief Justice Willis*, that the devisee of the estate, *Mr. Vernon*, had no remedy to obtain the release, but by stopping the payment of the annuity. Stress was also laid upon the particular phraseology of the clause in the codicil, creating the condition, saying, that all the words were in the present tense, which was just the same as if the testator had said, I give her the annuity, she releasing.

Now, this case is not marked by the same strong characteristics, as will be seen upon a fair analysis of it.

The provision annexed to the devise to *McKim*, in trust for the use of *Mrs. Slater*, for life, and afterwards for the use of her three children named, is in these words, "only upon condition that he, or they, pay to my executors, such sum as shall be found to be due my estate from William Slater, deceased"—with no contingent limitation over of the property devised, nor any further disposition or mention made of it in the will. Differing in that, from *Cary vs. Bertie*, where in the event of the niece not marrying *Lord Guilford*, within three years after the death of the testator, the estate was to go over to another; and in the meantime, nothing to descend to, or vest in the niece, (who was the heir at law,) who was to take nothing under the devise, except upon the contingency of her performing the condition imposed; upon which her right depended, and was to accrue. And unlike the case of *Acherley vs. Vernon*, where the estate was devised to another, subject to the payment of an annuity, to the sister of the testator, in lieu of, and in consideration of her releasing any claim she might have upon it. The object of the testator being, that the devisee should hold and enjoy the estate, discharged in the manner prescribed, from such claim, subject to the payment of the annuity in consideration of such discharge,

and that his sister should not have the annuity, until she exe-
cuted the release required. And unlike both of them in this,
that the debt if any, which was due from *William Slater*, is
not a creature of the will, but existed independently of it;
for the recovery of which, a remedy at law would have been
open to the executors of the testator, although no such con-
dition had been annexed to the devise. And it is not neces-
sary that the vesting of the title under the devise, should
depend upon the previous performance of the condition, as
the only remedy or means of obtaining the payment of the
debt, the thing required to be done.

·· As in *Cary vs. Bertie*, where there were no means of
obtaining the performance of the condition, the marriage of
the niece with *Lord Guilford*, except the making the benefit
of the devise to depend upon the marriage. And in *Acherley
vs. Vernon*, where it is said, as one of the grounds of the
decision, "that there was no remedy to obtain the release, but
by stopping the payment of the annuity." Here, the accep-
tance of the devise, would make the payment of the debt a
charge upon the property, and give a full and complete
remedy against the devisee for the recovery of the money.
There is therefore no absence of remedy, from which it is to
be inferred, that the testator intended it as a condition prece-
dent; nor any necessity for so considering it, in order to
gratify his apparent intention.

The devise to *McKim* is in fee, and upon no other trust
expressed, than for the use of *Mrs. Slater* and her three chil-
dren. And treating it as an absolute disposition of that por-
tion of his estate, the testator proceeds to dispose of all the
residue of his property, directly, and not in trust, "*in order*
(as he says) *to the settlement of his estate*," taking no notice
whatever of that which is devised to *McKim* in trust.

His object was, to make an immediate provision for *Mrs.
Slater* and her three children; requiring only, as a considera-
tion for that provision, the payment by them, or the trustee,
of whatever might be found to be due to him at the time of
his death, from *William Slater*, her deceased husband, after

the amount should be ascertained. No time is fixed for the payment, but it is required to be made by the trustee, or *cestui que trusts*, *Mrs. Slater* in her life time, or her three children after her death; he did not know that any thing would be due, and nothing might be, nor does it appear that any thing was due. He must have known that much time might elapse before the amount due, if any, was ascertained or made known by his executors, and having made no disposition in the meantime of the rents and profits, supposing that he had parted with all his interest in the property, he could hardly have meant, that it should lie useless during that time, in the hands of the trustee, without advantage to the *cestui que trusts*, for whose benefit alone it was intended, or to any body else; which would have been inconsistent with the idea of an immediate provision for them.

And the circumstance of his not having made an intermediate disposition of the rents and profits, or use of the property, as a means of procuring the payment of whatever might be due, before any interest should vest, goes far to shew that he did not intend such payment, as a condition precedent, but only as a consideration for the immediate bounty bestowed, secured as a charge upon the property, to be paid when the amount of the debt should be ascertained. And the condition annexed to the devise must be so considered, and not as operating as a condition precedent.

A different construction would offer violence to the apparent intention of the testator, which should always be gratified, where the words of the will, will permit it to be done, without violating some known principle of law.

With respect to the right of election claimed by the defendant, it is not to be questioned, that it may be given by will, either expressly (which is not done in this case,) or by implication. By implication, as where a man having 100 acres of wood land in the county of B. devises "10 acres of his wood land in the county of B.; or having two lots in the city of B. devises one of his two lots in the city of B. without designating the 10 acres of wood land, or saying out of what part

of the 100 acres they are to be taken, or without designating,
which of the two lots; in either case, a right of election is
given to the devisee, and he may take the 10 acres out of any
part of the 100 acres, or select which of the two lots he,
pleases.   In such a case, an election is necessary to give
effect to the devise; and the omission to make a designation
shewing it to be indifferent to the testator what selections is
made, is evidence of his intention to give the right of elec-
tion.   But the rule is otherwise in the case of a patent ambi-
guity, which if it cannot be aided by construction, renders
the devise void for uncertainty.   Or where there is nothing,
indicating an intention to give the right of election, but it is
apparent that the testator intended to make a designation of
the thing designed to be given.   In which case the right of
election does not arise under the will, and the devise will fail
to take effect, if the thing intended to be devised, cannot be
ascertained.   As in *Richardson vs. Watson, 24th English C.
L. Rep.* 164; where the testator having two closes in *Kirton,*
in the occupation of *John Watson,* but supposed he had only
one, described the land intended to be devised, in these words,
"and *also the close* in *Kirton* aforesaid, now in the occupa-
tion of said *John Watson,*" which was held not to be a case
of election; the chief justice saying, that "an election can
only take place where the intention of the devisor or grantor
is clear, that out of a mass, a certain portion should be
selected"—and there being nothing to show, which of the
two closes the testator intended to give, the devise was deter-
mined to be void for uncertainty.   It was not because the
description of the close (there being two) was so uncertain
that it could not be ascertained which of the two was inten-
ded, that it was held not to be a case of election; but because
there was a description given.   For the right of election can
only exist, where it appears from the context of the will, or
grant that the testator or grantor intended to give such right;
And the giving a description, however imperfect or uncertain,
and though through mistake (as in *Richardson vs. Watson,*)
shewing a selection in the mind of the testator or grantor

himself, is opposed to the supposition, that he intended to give the right of election to the devisee or grantee.

Trying the case before us by this test, there does not seem to be much difficulty in reaching the conclusion, that the right of election was not intended to be given by this will. If the devise had been of *"two of the lots,"* and conveyed, &c. the word "two," in that connection would have been descriptive not of *the two*, intended to be given, but of the quantity or number only, to be selected by the devisee; according to the apparent intention of the testator, out of a mass, or out of the whole number of lots or pieces of ground conveyed by the deed from *William Slater*, which being referred to, is to be considered as incorporated into the will. And a plain case of election would have been presented. But that is not the language of the will.

The words of the first of the clauses of devise to *McKim*, are, "all two lots, pieces or parcels of ground with the premises thereon, situate, lying and being in and near the *city of Baltimore*, which were heretofore on or about the 24th day of May, 1810, conveyed to me by *William Slater*."

Now what is there in these words, to show either, that the testator intended to pass the whole of the property covered by that deed, or to give to the devisee the right of election?

If only two lots had been conveyed by *Slater*, no question could have arisen; but six distinct and separate pieces of ground were conveyed, and if the testator had intended to pass the whole, why was the word "two" introduced in the will, knowing there were six, as is shown by the reference to the deed, by which his title to the whole was acquired. The words *all the lots conveyed*, &c. would have been sufficient, if all was intended; and there could have been no mistake in supposing there were but two. At least none is shown, or to be presumed. On the contrary, in the absence of all other evidence upon the subject, it is to be taken from the reference to the deed, the consideration of which is expressed to be $12,000, that the testator was acquainted with its contents

and knew that it conveyed six pieces of ground, as well as he knew that it conveyed two.

It must therefore be understood, that the word "two," was used to denote the intention of the testator, to give but two of the six pieces conveyed.    It could have been used for no other purpose, and would not only have been unnecessary, if all were intended to be given, with a knowledge that there were six, but repugnant to that intention.

The word "all" it has been supposed, shews the intention of the testator to have been to pass the whole six pieces of ground mentioned in the deed referred to.    To give to it that effect, would be to reject the word "two" altogether, which cannot be done.    It was unnecessary, but coupled with the word "two," to which it relates, *"all two lots,"* it must be restrained by the word "two" and understood to mean, *all the two lots*, or *the whole of the two lots*, &c., the word *"the"* being omitted ; which, or the word *those* is necessary to the sense.    And so read, (and it will bear no other sensible reading) it is apparent, that the testator intended to give two lots only, and not the right of election ; but to designate himself, the two lots which he meant should pass.

This construction is strengthened by the next immediately following clause, in these words, "I give and bequeath the foregoing lots or parcels of ground, *described as aforesaid,* unto *Alexander McKim,*" &c.; treating and speaking of it as a description of the lots intended to be given, and thus plainly showing, that it was not the intention of the testator to give the right of election.    And that description sufficiently designates the two lots intended.

It is an acknowledged principle, that the heir being favoured in law, there shall be no strained construction to work a disherison where the words are ambiguous or doubtful ; but it is also settled, that where the intent of the testator is apparent, no word shall be added or dropt, to defeat such intention ; which must prevail, if it can be carried into effect without violating some settled principle of law.

Let us see upon further examination, whether by deciding

Creswell *vs.* Lawson.—1835.

that two lots only were intended to be given by this will; and that they are described with sufficient certainty to give effect to that intent, and preclude a right to elect which two to take, either of these principles will be contravened.

There are five clauses in the deed from *William Slater*, describing the property conveyed; each designating the particular portion it professes to describe.

That portion which is contained in the first of these clauses, is described by courses and distances, &c. as "all that piece or parcel of ground lying in *Baltimore town*, now city." That contained in the second, as "all those two lots or parcels of ground situate in the *south-east* addition to *Baltimore town*, now city, distinguished on the plat thereof, by numbers 23 and 686." That contained in the third clause, by courses and distances, &c. as "all that part of a tract or parcel of land, lying and being in *Baltimore county*, called *Cole's Harbour* or *Todd's Range*," &c. The fourth as "all that lot or parcel of ground lying in the *county* aforesaid, being part of a tract of land called *Darbey Hall*, and distinguished on the plat thereof by number 58"—and that portion which is contained in the fifth clause, as "all that piece and parcel of ground and premises, that is situate, lying and being in Baltimore county aforesaid, containing four acres or thereabouts; the same being part of a tract of land called *Darbey Hall*, &c. and distinguished on a plat of said land, by number 36," &c. And the devise in question, is of "all two lots, pieces or parcels of ground, with the premises thereon, situate, lying and being in and near the *city of Baltimore*, which were so conveyed, &c. by *William Slater*." This deed by which six pieces of real property, described in five separate clauses, were conveyed, is not only referred to, but its date, the place where, and the folio in which it is recorded, are particularly stated. It must therefore at the time, have been before the scrivener who wrote the will, or the testator himself if he wrote it, or fully recollected, and its contents known.

Looking to this deed, and to the devise made in reference to it, of which it is to be taken as a part, in relation to the

32        v.7

description of the property, what appears to have been the intention of the testator? Not to dispose of all the pieces of property conveyed by it, because knowing there were six, which he must be presumed to have known, he has in terms devised but two, and could not therefore have intended, that the whole six should pass; and for the description of those two, refers to the deed—In which three of the six pieces are described as lying in *Baltimore* county, (not in the city) and one of those three, as containing about four acres. One other piece, is described not as a lot, but by courses and distances, &c. as a " piece or parcel of ground; lying in Baltimore city." And the two other pieces, are described in a separate clause, as a distinct portion of the property conveyed and as all those two *lots* or parcels of ground situate in the south-east addition to Baltimore city, setting out their respective numbers, as city lots. Two only of these six pieces of property are expressly devised; and they are spoken of in the second clause of the devise, as being described in the first, which refers to the deed from *Slater*, for their description; where we find two lots situate in the *south-east* addition to *Baltimore* city, described as a portion of the property conveyed.—If those two lots, are not the lots intended, there is no description in the deed, of any two lots, by which the lots intended to be given, can be ascertained; and the devise must fail to take effect for uncertainty; the evident intention of the testator to designate them, being inconsistent with, and opposed to any intention to give the right of election to the devisee.

But it was manifestly his intention to pass two lots described in the deed; and that intention must be gratified, if they can with sufficient certainty be ascertained. If adopting the words of the deed, the devise had been of " all those two lots or parcels of ground, situate in Baltimore city," conveyed, &c., by *Slater*, omitting the other words of description in the deed, there could have been little doubt upon the question, and it could be considered as clearly relating to that portion of the property conveyed, which is described, in

one of the clauses, as two lots lying in the city; there being no other lots, described as such; and as lying in the city, in that or either of the other clauses, the addition as in the deed, of the words, " in the south-east addition to," or of the number of the lots, would have rendered it perfectly clear; but the description would have been sufficient without either, not being incompatable, but perfectly consistent with, the more full description in the deed, and by the reference to the deed adopting it. He intended to give two lots described as such, and to designate which two, and thought he had done so, by the reference to the deed for their description; the deed in a separate and distinct clause, describes two lots, and no more, as such, " all those two lots;" no other portion of the property conveyed, is described as *two lots*, but each of the other pieces is separately described, in separate clauses; only one of which is called a lot, and that described as lying in *Baltimore* county, and not intending, that the trustee, or the *cestui que trusts* should be at liberty to select any two of the six pieces, who might differ in opinion, and not be able to make a selection, but designing to make the selection himself; and the devise being of an immediate interest to vest upon his death, the intention of the testator, to give the two lots described together in the deed, as such, is sufficiently apparent—and effect will be given to that intention, and the devise be saved, by reading it, " all those two lots," as in the deed, adding the word "those," to give it sense; instead of " all two lots," which requires some word to give it meaning. And where the intention of a testator is ascertained, such a word may be added to carry it into effect; the evident presumption being, that it was omitted by mistake. Reliance has been placed by counsel in argument, on the words in the devise, "and near," as denoting lots, not lying within the *city of Baltimore*, or that one at least of the lots intended did not lie in the city. But the word "and" may be read or, and both may be considered as incautiously superadded, and as mere surplusage. The rule being, that where the description of the thing intended

to pass, is otherwise sufficiently certain, the addition of a circumstance false or mistaken, or of a subsequent defective description, will not vitiate the correct description, or frustrate the grant or devise—As in *Goodtitle vs. Southern, 1st M. S.* 299, *cited by Littledale, justice, in* 24*th English Com. Law Rep.* 167. Where the devise being, of " all that my farm called *Braques* farm, now in the occupation of A.," when in fact it was not in the occupation of A., the subsequent defective description, was held not to vitiate the previous correct one. The same principle is recognized in *Jackson vs. Clark,* 7*th Johnson's Rep.* 217, and in *Worthington and others vs. Hylye and others,* 4*th Tyngs. Mass. reports,* 196, and in other books. The same may be said of the superadded words to the description in this devise, " with the premises thereon," the proof being, that the two lots described in the deed, as lying in the *south-east* addition to *Baltimore city,* were at the time of the devise unimproved ; which for that reason, it is supposed were not the two lots intended, the words, " with the premises thereon," being construed to mean improvements. But that is to be considered, as an unnecessary, and unimportant addition by the scrivener ; a trifling inaccuracy in the description.—As in *Jackson vs. Clark,* before adverted to, where the addition of the words " with a dwelling-house thereon ;" there being no dwelling-house on the premises, was held to be of no consequence—The two lots described in the deed, as lying in the *south-east* addition to *Baltimore city,* are the only two lots, answering in any manner to the description given in the devise ; and must be considered, as the two lots intended, and in the mind of the testator, at the time of making his will.

Briefly to recapitulate ; no right of election was given by the devise ; two, and two only, of the six pieces of ground conveyed by Slater to the testator, passed under it, and they are the two lots described in that deed, as two lots or parcels of ground situate in the south-east addition to *Baltimore town,* now city, numbered 23, and 686. And the payment

of the sum, that has, or may be found to have been due from *William Slater* to *John Creswell, the testator,* is not a condition precedent, to the vesting of the title to the two lots devised.

The several questions discussed in relation to the exercise of a right of election, have not been examined; the decision that no right of election exists, making it unnecessary.

The judgment must be reversed.

JUDGMENT REVERSED.