(Decided 16th March, 1881.)

---

GEORGE G. HAMMOND, and others *vs.* CHARLES LEWIS HAMMOND, and others.

*Construction of a Conditional Bequest—Condition Subsequent—*
*Extrinsic Evidence—When a Will takes effect.*

The will of W. B. H. contained an item bequeathing to his brother C. L. H., "the sum of twenty five hundred dollars, secured by a mortgage from W. H., for that, he, the said C. L. H., shall look after and take care of our beloved brother R., while he shall live, and bury him at his death." It appeared, that at the time W. B. H. was about to make his will, R. was sick, and W. B. H. asked C. L. H. for what sum of money he would take care of R. and bury him at his death, and that C. L. H. agreed to perform said services for the amount willed to him; that C. L. H. accordingly took charge of R., who was at his house, and buried him at his death, which happened before that of the testator. In a proceeding in equity to obtain a construction of the will, it was HELD:

That the condition annexed to the bequest to C. L. H., was a condition subsequent, and its performance becoming impossible by the act of God, he took unconditionally.

Extrinsic evidence in the interpretation of wills, is admissible, not to show what the testator meant, as distinguished from what his words express, but simply what is the meaning of his words.

A will speaks from the death of the testator, and not from its date, unless by a fair construction its language indicates the contrary intention.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BOWIE, MILLER, ROBINSON and IRVING, J.

*Charles Marshall*, for the appellants.

*Sebastian Brown*, for the appellee.

BOWIE, J., prepared the following opinion in his lifetime, and the same being concurred in after his decease by the Judges who participated in the hearing, it was filed as the opinion of the Court.

The appellants filed their bill of complaint in the Circuit Court of Baltimore City against the appellees, for the purpose of ascertaining and establishing the true construction of the will of William B. Hammond, late of said city, deceased. They allege that the testator died on or about the 23rd day of May, 1877, leaving a last will, which has been duly admitted to probate in the Orphans' Court of Baltimore City, and Charles Lewis Hammond, (one of the appellees,) executor named therein, has duly qualified as executor, and obtained letters testamentary thereon.

It is further charged, that by one of the clauses of the will, the testator bequeathed to his brother, the said Charles Lewis Hammond, "the sum of twenty-five hundred dollars, secured by a mortgage from William Huddleson of Montgomery County, for that he the said C. Lewis Hammond, shall look after and take care of our beloved brother Rezin, while he shall live, and bury him at his death."

They allege, "that the brother Rezin mentioned in said clause, died before the testator, and they are advised, and claim that by the true construction of the above recited clause of said will, which was intended to make provision for said Rezin, the sum of twenty-five hundred dollars is not bequeathed in trust for said Rezin, but that it is a certain sum left to the said Charles Lewis Hammond, as the consideration of the assumption by him of the care of said Rezin while living, and burying him when dead; and that the said C. Lewis Hammond, would not be entitled to said legacy, unless he should, after the death of the testator assume said duties, and in case he should accept said legacy, his obligation to perform said offices in favor of said Rezin, would be entirely independent of the amount of said bequest, and would be co-extensive with the life of said Rezin, without reference to the amount that might have to be expended in discharging said offices."

The complainants claim, therefore, that by the death of said Rezin, before the testator, the said C. Lewis Hammond was prevented from performing the condition on which he was to have said legacy, and is no more entitled to the same than he would have been had said Rezin survived the testator, and the said C. Lewis Hammond refused to assume the performance of the duties towards said Rezin, mentioned in said will.

It is further charged that Charles Lewis Hammond has collected the money mentioned in said above cited

clause of the will, and refuses to distribute the same among the persons entitled thereto, although all the deb s of the estate have been paid, and more than a year elapsed since the granting of the letters testamentary. That although there is no general residuary clause in the will, there is a special residuary clause which includes all *choses in action,* and they are advised that by failure of the above bequest, the said sum of $2500 passed to the persons named in said residuary clause, viz., the complainants, brothers and sisters of the testator.

The bill prays that the construction of the will set forth therein, may be declared the true construction, and the executor required to charge himself accordingly with the $2500 and interest, and pay over to the complainants their respective shares.

A copy of the will, duly authenticated, is filed with the bill, marked Exhibit A.

The answer of Charles Lewis Hammond, in his own right, and as executor, was filed, admitting

1st. The execution of the will, the death of William B. Hammond, the granting of letters testamentary to him, the respondent, and the collection of the money.

2nd. That the will contains the clause specifically set forth in the bill of complaint, but denies that the true intent and meaning of the language of said clause is set forth in the bill.

Further answering the respondent says, " that at the time the testator was preparing to have said will written, he asked the respondent, for what sum of money he would agree to look after and take care of Rezin Hammond as long as the said Rezin should live, and bury him at his death, and the respondent in answer thereto, and in the presence of witnesses, agreed to perform said services for such sum of money as the said William B. Hammond would devise to the respondent for that purpose. That at the time of this conversation the said Rezin Hammond

was sick and very feeble, all of which was well-known to the said William B. Hammond, and it was also known to the said deceased, that this respondent was a poor man with a large family of young children upon his hands, and he knew at the time of making said will, that the said Rezin was at the house of the respondent confined to his bed. And the respondent further says, he knew of the devise to him of said $2500 mentioned in the bill and of the conditions connected therewith, and that under and by virtue of said devise he looked after and took care of the said Rezin Hammond as long as he lived, and buried him at his death, and that he did agree with the said William B. Hammond to look after and take care of the said Rezin, and bury him at his death in consideration of said devise, and if said devise had not been made he was not able to, and could not have maintained said Rezin."

The respondent further contends that the testator survived the said Rezin, and although, he was in possession of his faculties and had ample opportunity to revoke said bequest, never did so, and never contemplated it, and it was not in his power to make a valid revocation of said bequest.

That apart from the agreement aforesaid, the devise took effect at the time of the execution of the will, and the respondent was to receive the sum of $2500 irrespective of the time said Rezin Hammond should die, provided the respondent from the execution of said will should look after, take care of and bury said Rezin, which he avers he did. These citations from the bill and answer foreshadow and present substantially the conflicting views of the appellants and appellees, which are set out more in detail in the briefs, and arguments of the counsel for the respective parties.

The appellants contend that the will is to be construed as speaking from the death of the testator, and that as the bequest was given in consideration that he should

take care of Rezin Hammond and bury him when he died, "it follows, that on the death of Rezin before the testator, the bequest fails."

The appellee's theory is, that the will is to be taken as speaking from the date of its execution, although it does not operate until the testator's death; and if construed, as speaking from the death of the testator, then the condition being a condition subsequent and becoming impossible, the bequest vested unconditionally in the legatee.

A commission was issued and returned, under which the testimony of the draughtsman of the will and other witnesses as to the declarations of the testator, prior to and at the time of the execution of the will, were taken.

To all of which testimony the appellants excepted, on the ground of irrelevancy.

In order to discover the intention of the testator, it is the duty of the Court to put themselves in the place of the testator, and then see how the terms of the will affect the property or the subject-matter. 1 *Greenleaf's Evid.*, part II, sec. 287.

In the 5th proposition of Vice-Chancellor WIGRAM's rules of interpretation of wills, it is said "for the purpose of determining the object of the testator's bounty, or the subject of disposition or the quantity of interest intended to be given by his will, a Court may inquire into every material fact relating to the person who claims to be interested under the will." 1 *Greenleaf's Evid., id., note* 1.

Lord ABINGER's opinion in the case of *Hiscocks vs. Hiscocks*, 5 *M. & W.*, 363, 367, incorporated by Greenleaf in his chapter on the admissibility of parol evidence, as the most luminous exposition and exhaustive essay on the subject, states that "all the facts and circumstances, therefore, respecting persons or property, to which the will relates, are undoubtedly legitimate, and often necessary evidence to enable us to understand the meaning and application of his words." 1 *Greenleaf, sec.* 289.

The same doctrine is announced by this Court in the case of *Hawman & Wife vs. Thomas, Ex'r,* 44 *Md.,* 43, where it is said : " The only object and purpose for which such proof can be properly admitted, is, not to show what the testator meant, as distinguished from what his words express, but simply what is the meaning of his words." See *Walston's Lessee vs. White,* 5 *Md.,* 297. To the same effect is the language of SHAW, C. J., in *Tucker vs. Seaman's Aid Society,* 7 *Metcalf,* 205. " Extrinsic evidence is admissible only when the will is plain and clear upon its face, and becomes doubtful when applied to the subject-matter." *Allen's Ex'rs vs. Allen,* 18 *Howard,* 393.

The doubt in this case arises not from any obscurity or ambiguity on the face of the will, but from the contest as to the rules of construction to be applied, and the class of conditional bequests to which it belongs, whether precedent or subsequent.

The rule of interpretation, as to the period of time from which the will speaks, both in this State and in England varied formerly, with the subject-matter to which it applied. As to real estate, it was supposed to speak (or operate) only on such lands, etc., as the testator held at the date or execution of the will, but as to personalty, it operated upon all he owned at the time of his death. Although, generally, as testamentary instruments they were construed as speaking from the time and event by which they became consummated, the death of the testator, there was no invariable rule, except as determined by the species of property bequeathed or devised. Thus Jarman, speaking of wills generally, says, "for some purposes a will is considered to speak from its date or execution, and for others from the death of the testator, the former being the period of its inception, and the latter, that of the consummation of the instrument." 1 *Jarman,* 292, (3rd *Amer. Ed.*)

In the summary of his rules for construction, it is said, " that a will speaks, for some purposes, from the period of

execution, and for others, from the death of the testator; but never operates until the latter period." *Rule IV*, 2 *Jarman*, *p.* 741 *in Mar.*, (3rd Amer. Ed.) The general rule, however, as we have before intimated is, "that a will speaks from the death of the testator, and not from its date, unless its language, by a fair construction, indicates the contrary intention." *Canfield vs. Bostwick,* 21 *Conn.*, 550 ; *Gold vs. Judson,* 21 *Conn.*, 616.

Adopting the general rule of construction, we proceed to inquire whether the bequest under consideration comes within the class of legacies upon condition precedent, or legacies upon condition subsequent.

It was said by WILLES, C. J., in *Acherley vs. Vernon,* "that no words necessarily made a condition precedent, but the same words would make a condition either precedent or subsequent, according to the nature of the thing and the intent of the parties." *Willes' Rep.*, 153. *Gillett vs. Wray,* 1 *P. Wms.*, 384 ; *Harvey vs. Aston,* 1 *Atk.*, 361 ; 4 *Kent*, (5th Ed.) 124, 125 ; 7 *G. & J.*, 240, *et al.*, cited in note 1, 1 *Jar. on Wills, p.* 798. The item of the will under consideration is a specific bequest for a particular purpose to be accomplished *in futuro,* without any disposition over, in case of non-performance. It closely resembles the case of *Thomas vs. Howell,* 1 *Salk.*, 170, where one devised to his eldest daughter on condition that she should marry his nephew on or before she attained twenty-one years. The nephew died young, and after his death, the devisee being then under twenty-one, married another.

It was held, that the condition was not broken, its performance having been impossible by the Act of God. 1 *Jarman,* 808, *in Mar.*

Without multiplying examples, which are numerous, the condition annexed to this bequest is both in the collocation of its language and the order of events so clearly posterior to the vesting of the legacy, that we have no difficulty in declaring it a condition subsequent, and its

performance becoming impossible by the Act of Providence, the legatee takes unconditionally.

*Decree affirmed, with
costs to the appellee.*

(Decided 16th March, 1881.)