## CIRCUIT COURT OF BALTIMORE CITY.

Filed January 3, 1899.

DAVID B. ELLICOTT, ET AL.,
VS.
THOMAS P. ELLICOTT, ET AL.

*Bernard Carter* and *John P. Poe* for plaintiffs.

*William A. Fisher* and *Arthur Steuart* for defendants.

WICKES, J.—

The bill of complaint was filed for the construction of certain clauses in the will of Mrs. Elizabeth E. Pike.

They are substantially as follows:

"I leave the rest of my Baltimore property to my grandnephew, James Pike Ellicott, for the purpose of securing to him a liberal education. He shall remain at some good preparatory school in the State of Massachusetts until he is fitted to enter either Harvard or Yale University, where he shall remain until he has finished the collegiate course. If, however, *through his own disinclination or incapacity, or the indifference of his parent or guardian,* he should fail to carry out these intentions, then the money which has been left to him for this purpose shall pass from him entirely, into the body of my estate." And again, "I give and bequeath to my grandnephew, James Pike Ellicott, in fee simple all my real estate situated in the town of Robbinston, Maine. Also all furniture, etc." * * * "Provided, however, that all the estate and property devised and bequeathed by me to James Pike Ellicott, shall be held by my trustee until the said James Pike Ellicott shall have attained the age of 25 years, in trust to rent, take charge of" * * * the real estate. "Also to keep the personal estate invested, etc.," and "devote the net income arising therefrom to the special object mentioned above, viz., the education of James Pike Ellicott, it being my desire that he may be thoroughly prepared to enter into any profession for which he has inclination or capacity." * * * "In case the above directions have been carried out, upon attaining the age of twenty-five years, I desire my trustee to deliver over the property and estate into his hands and possession. But I specially desire my grandnephew not to sell the Robbinston place till he shall attain the age of twenty-five years, as it is my earnest wish to keep the property as long as possible in the family and have it go with the name."

The facts disclose that the grandnephew James bore the name of the testatrix's husband who was quite a distinguished man, and that until her death he was the object of her special affection and solicitude. She defrayed his expenses largely and selected for him the preparatory school at Andover, through which he passed successfully. He entered Harvard University, with certain conditions, however, attached, which seem never to have been removed, and during his second year and only a few months after he attained his majority was taken with pneumonia and died.

2

Did the estate vest in him at the death of Mrs. Pike, and if so, was it divested by subsequent events? The distribution depends upon the decision of these questions.

There are certain well-settled principles of law to be borne in mind in considering this will, which require no citation of authorities to sustain them. One is that the law favors the vesting of estates and that to make an estate contingent it must appear from the language used and the nature and circumstances of the case that the time of payment was made the substance of the gift.

Estates will always be held to be vested whenever it can fairly be done without doing violence to the language of the will. 29 Md. 456; 61 Md. 152.

It follows from this that the law does not look with favor upon conditions which are said to be "a restraint annexed to a thing, so that by the non-performance of . it the party thereto shall receive prejudice and loss, and by the performance ˙of a convenience and advantage"—or again "A kind of law or bridle annexed to one's act staying or suspending the same and making it uncertain whether it shall take effect or not." If the restraint is to operate before the vesting, it is a condition precedent. If afterward, a condition subsequent. Whether a condition be precedent or subsequent is a question of *intention*, which must always in determining questions of this character, be taken into account. And it is upon this great fundamental ground of *intention* on the part of the testatrix as disclosed by her will, apart from all artificial rules of construction, and as overriding all, that the plaintiffs rely in this case.

Now there can be no doubt that the object Mrs. Pike had in view was the "liberal education" of the grandnephew she so highly favored. She so says in unmistakable language; "For the purpose of securing to him a liberal education." "That he may be thoroughly prepared to enter into any profession for which he has inclination or capacity." She doubtless intended he should reflect credit upon the name he bore, and add if possible additional lustre to it.

But it is difficult to understand upon what principle of construction this single purpose shall be ascertained from the will, and all else disregarded.

I am of opinion that a careful reading of its provisions will not only show that she intended this estate to vest immediately, but that she herself placed that construction upon the will she had written.

In the first place she *"leaves"* her Baltimore property and *"gives and bequeaths"* her property in Maine, *"in fee-simple,''* to her grandnephew— words which standing alone import a present gift and confer an absolute estate. She then describes it, as *"the money which has been left him,"* and provides that under certain circumstances, it shall *"pass away"* from him entirely." She then specially desires "that her grandnephew shall not *sell the Robbinston place till he shall attain the age of twenty-five years."* The period at which, if her condition was complied with, "the trustee is to deliver over the property and estate into his hands and *possession."* The income in the meantime to be used for his education, support, etc.

She, therefore, *left, gave and ˙ bequeathed* to him her property, and described it as property which has *been left to him:* She provided that it shall "pass away from him" in a certain event, and requested that he should *not sell it* prior to the time the "possession" of it was to be handed over to him.

I do not think it is a strained construction of these provisions, to say that her clear intention was that the object of her bounty should take a vested interest, liable, of course, to be divested, upon his failure to comply with the condition attached.

No rule of law is contravened in so holding.

The principle is well settled, that if the act does not *necessarily precede* the vesting of the estate, but may accompany or follow it, the condition is subsequent.

The condition, then, upon which this estate is to pass away from him, is his failure to complete his collegiate course, "through his own disinclination or incapacity, or the indifference of his parent or guardian." The facts show that he did not fail for either one of these reasons, unless death was contemplated, and provided for in the word "incapacity."

She employs the same words, or rather the same thought, again, when she expresses her desire that he may be "thoroughly prepared to enter into any profession for which he has *inclination or capacity.*"

Certainly there was no disinclination, for he fell in the presence of the Great Destroyer, doing the work she had set before him. Nothing to show that parent or guardian was indifferent to his effort.

Mental incapacity, I think was clearly intended, and in both paragraphs of the will, the word has the same meaning.

Realizing the force of this construction, the learned counsel for plaintiffs have very earnestly contended that the burden of proof was upon the defendants to show that James could have completed his course at Harvard had he lived. But this, I think, may be inferred from the fact that he had already passed to his second year, with nothing to show that his future would be embarrassed by any incapacity on his part.

When then she herself has named the causes of failure which should operate to forfeit his interest in this estate, and his failure resulted from an entirely different cause, and one over which he had no control, and especially when the failure resulted from what is called the act of God, can it be possible that the effect would be to divest an estate already vested. The well settled rules of law lead to the opposite direction.

We have seen that the law leans to vested interests, and that it does not favor these restrictions, and it is equally true that the Courts construe conditions subsequent with rigid strictness, never permitting an absolute gift to be defeated unless it be perfectly clear that the exact case has happened to cause the divesting to arise.

It must be clear, I think, that the failure to discharge the obligation imposed upon him was not due to any one of the causes the testatrix made the test of her bounty. So long as he lived he labored to comply with her wishes. Death, and not his own volition, or incapacity, or any want of interest on the part of parents or guardian stopped the completion of his performance of the condition, and when the full fruition of his efforts was prevented by the act of God, the rights of the parties stand as if there had been a full performance. The weight of authority, certainly in this State, is to that effect.

In Merrill vs. Moses, 10 Pickering 511, a testator gave a legacy to his wife upon condition that she should educate and bring up his granddaughter. The wife died a few days after the testator, leaving the granddaughter surviving, and it was claimed that the estate of the wife was not entitled to the legacy because the condition had not been complied with. Chief Justice Shaw said, "Clearly this is a condition subsequent" * * * "The defendant objects that it was not complied with." * * * "The duty terminates with her own life and the condition was performed." * * * "Besides in the case of a condition subsequent, the act of God excuses non-performance."

In Sutcliffe vs. Richardson, L. R., 13 Eq. 606, a testator gave £8000 to trustees, the income to be paid to his widow. By a codicil he directed his trustees in addition should pay to his widow £100 yearly, so long as his wife and son should reside together, and added, "but if they should cease to reside together, then I direct that the said payment should cease." They did reside together until the death of the son. Vice Chancellor Bacon held that the death of the son had not defeated the right of the widow to the £100, annually, since it was a natural accident which had prevented continuing to reside together.

In Hammond vs. Hammond, 55 Md. 582, the Court of Appeals decided that a condition subsequent is not broken and a forfeiture not incurred when the performance has been rendered impossible by the act of God.

In that case the bequest was of the sum of $2,500 to C. L. Hammond "for that he shall look after, and take care of our beloved brother, Rezin, while he shall live and bury him at his death." Rezin died before the testator.

Judge Bowie, referring to the case of Thomas vs. Howell, 1 Salkeld's R. 170, said: "It closely resembles the case of Thomas vs. Howell, where one devised to his eldest daughter on condition that she should marry his nephew on or before she attained twenty-one years. The nephew died young, and after his death the devisee being then

under twenty-one, married another. It was held that the condition was not broken, its performance having been rendered impossible by the act of God." Judge Bowie in deciding the case before him said "without multiplying examples, which are numerous, the condition annexed to this bequest is both in the collocation of its language and the order of events so clearly posterior to the vesting of the legacy that we have no difficulty in declaring it a condition subsequent, and its performance becoming impossible by the Act of Providence, the legatee takes unconditionally."

The principles of law, therefore, which should govern in the construction of this will, and the intention of the testatrix as derived from the instrument itself have led me to the conclusion that James Pike Ellicott took a vested estate in the property bequeathed to him, liable to be divested upon his failure to comply with the conditions attached, especially for any one of the causes enumerated in the will. That his failure not being for any one of the reasons named, but the result of a visitation of providence, that the partially fulfilled condition must be regarded as performed so far as it affects the legal rights of the parties to this controversy.

A decree giving effect to these views will be signed.