# GEORGE WALSTON's Lessee *vs.* RUFUS WHITE.

A testator devised by one clause of his will "all my land which lies on the south side of the county road leading, &c., called 'Parsons' Outlet, or by whatsoever name or names the same may be known or called, except so much of said land as lies on the south side of Beaver Dam Branch;" and by another clause he devised "all the lands I own on the south side of Beaver Dam Branch." HELD:

1st. That the first clause is confined to the tract called Parsons' Outlet, and that another tract lying southwardly from the branch and distant from it one and-a-half or two miles, and bounding upon the south side of the road, passes by the *second* clause, as well as the parts of Parsons' Outlet which lie south of the branch and contiguous thereto.

2nd. Extrinsic evidence was admissible to show the location of the land and of the branch, but not to show what was the *intention* of the testator in the use of the words, "Beaver Dam Branch"

Where a given subject is devised and there are two pieces of property, the one technically and precisely corresponding to the description in the devise and the other not so completely answering thereto, the latter will be excluded.

Where the language of the will is plain and unambiguous it must govern, and no extrinsic evidence is admissible to show that the testator *meant* something different from what his language imports, but any evidence is admissible which simply *explains* what the testator *has* written.

It is a well established canon of construction, that the intention of the testator is to govern when it is not in conflict with some principle of law.

APPEAL from the Circuit Court of Worcester county.

*Ejectment* by the appellant against the appellee for a tract of land called *"Jerusalem."* Plea, *non cul.*, and defence on warrant.

Both parties claim under certain clauses in the will of Jonathan S. Parsons, executed on the 1st of June 1848, which are

fully set out in the opinion of this court. The following plat
and explanations sufficiently exhibit the location of the land:

*Explanations of the aforegoing Plat.*

1. From M. to G. runs the stream located by the plaintiff as "Beaver Dam Branch;" at F. there is a fork of the stream extending to G.

2. From R. to A. is the road leading from "Salisbury to Dirickson's Cross-Roads."

3. The land in dispute is two miles by the road from B., where there is a bridge over the stream, and about a mile and-a-half from M., the head of the branch, and borders upon the south side of the road.

4. *D.* and *E.* are small parts of "Parsons' Outlet" which lie south of the branch, and C. is a portion of the same tract lying north of the road.

*Exception.* Proof, both documentary and oral, was offered by both parties to show the true location of "Beaver Dam Branch." Some of the witnesses proved that the stream, throughout its entire length, was called by that name, whilst others proved that north of the forks it bore a different name, the northern and longer branch being called "Parsons' Mill Branch," and the other "Perdue's Mill Branch." Some of the witnesses also prove that the testator, Jonathan S. Parsons, called the stream "Beaver Dam Branch," whilst others prove that they have heard him call that part of it north of the fork "Parsons' Mill Branch." The same difference is also found in the documentary proof, which consisted of patents and deeds for land situated upon the stream, it being called in some "Beaver Dam Branch," and in others "Parsons' Mill Branch." Upon this testimony the plaintiff offered three prayers, which are stated in the opinion of this court, all of which the court below, (SPENCE, J.,) rejected, to which ruling the plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Oliver Miller* for the appellant.

1st. The land in controversy does not pass by the *first* clause in the will, for this devise is restricted in *two* particulars:

*first*, to the land called "*Parsons' Outlet.*" The words are, "all my land, &c., called Parsons' Outlet, or by whatsoever name or names the *same* may be known or called." The words, or by "whatsoever name," &c., are but qualifications of the previous words, "called Parsons' Outlet," the patent for which tract consisted of a resurvey of several smaller ones whose names are given, and hence the propriety of the insertion of the qualifying words above. *Secondly,* but in case these words should be ·construed to extend to any other lands owned by the testator, the devise is still restricted to that part of the land which lies north of "Beaver Dam Branch." The words are, "except so much of *said land* as lies on the south side of Beaver Dam Branch." The *exception* is as broad as the devise. Where a grant is in *general terms,* the addition of a *particular* circumstance will operate by way of restriction and modification of it. *5 East,* 51, *Conolly vs. Vernon.* 3 *Atk.,* 9, *Gascoigne vs. Barker.* 7 *Johns.,* 223, *Jackson vs. Clark.* 18 *Johns.,* 84, *Jackson vs. Loomis.* 1 *Maule & Selw.,* 299, *Goodtitle vs. Southern.*

2nd. The land passes to the plaintiff by the true construction of the *second* clause of the will. The rule of construction applicable to the case is: "that the words of a will are to be construed according to their natural sense, unless some obvious inconvenience or incongruity would arise from such construction." 1 *Johns. Ch. Rep.,* 220, *Roosevelt vs. Thurman.* The words of the second clause are free from all ambiguity and comprehensive as language can make them:—"*all the lands* I own on the south side of Beaver Dam Branch." The word "*lands*" is used in the plural, when in the preceding clause it is in the singular, and clearly shows that the testator had this very tract, in connection with that portion of "Parsons' Outlet" which was south of the branch, in his mind when he wrote this clause of his will. It is not necessary that the land should lie immediately contiguous to the branch. 1 *H. & J.,* 417, *Berry's Lessee vs. Berry.* 12 *Metcalf,* 127, *Hunt vs. South Parish of Braintree.* Our prayers leave to the jury to find the only facts to prove which extrinsic evidence is admissible, viz., the *location* of the land and of the *branch.* Any

Walston's Lessee vs. White.

evidence is admissible which, in its nature and effect, simply explains what the testator *has* written; but no evidence can be admissible, which, in its nature or effect, is applicable to the purpose of showing merely what he *intended* to have written. In other words, the question, in expounding a will, is not what the testator meant as distinguished from what his words express? but simply, what is the meaning of his words? *Wigram on Extrinsic Evidence*, 9, 51, 101, 169.    5 *Mees. & Wels.*, 362, 368, *Hiscocks vs. Hiscocks*.    1 *Greenlf. on Ev.*, sec. 289.

*Wm. S. Waters* for the appellee.

1st. The land in controversy lies upon the *south side* of the road, and therefore comes clearly within the first branch of the description in the devise to the appellee, and this is not to be controlled by the vague and uncertain description in the latter part. The evidence is conflicting as to the name of the branch above the forks, the witnesses proving that in earlier times it was called Beaver Dam Branch, whilst more recently it has been called by a different name. The prayers should have left to the jury to find this *change of name*, and were defective in not submitting all the facts to the jury. What the testator called Beaver Dam Branch, was a material fact, and ought to have been noticed in the prayers. The will must be read with the light of surrounding circumstances.    1 *Greenlf. on Ev.*, secs. 277, 282, 289.    *Wigram on Extrinsic Evidence*, 62, 150.    2 *Barn. & Adol.*, 680, *Gore vs. Gore*. 22 *Wend.*, 148, *Ryerss vs. Wheeler*.

2nd. The portions of "Parsons' Outlet" which lie on the south side of Beaver Dam Branch come fully within the description of the second clause of the will, and satisfy it without resorting to the land in controversy. Where there are two tracts of land, and one technically and precisely corresponds to the description in the devise and the other does not so completely answer thereto, the latter will be excluded.    1 *Jarman on Wills*, 720.    3 *Barn. & Adol.*, 453, *Ashforth vs. Bower*. 12 *Metcalf*, 127, *Hunt vs. South Parish of Braintree*.

LE GRAND, C. J., delivered the opinion of this court.

This is an ejectment brought to recover a tract of land called Jerusalem, claimed by the appellant by virtue of a devise to him contained in the will of Jonathan S. Parsons. The testator was seized of a body of land comprising sundry small tracts, which had been resurveyed and consolidated into one tract, called Parsons' Outlet. Through Parsons' Outlet flowed the Beaver Dam Branch, separating from the body which lay on the north side two small parts which lay on the south side, and in immediate contiguity with the stream. The road from Salisbury to Dirickson's Cross-Roads passes through the said tract and crosses the branch, leaving a large body of Parsons' Outlet on the north side of the road, and a considerable portion south of the road and north of the branch. Parsons owned also the tract called Jerusalem, which lies southwardly of Beaver Dam Branch, distant from it one and-a-half to two miles. There is no evidence that he owned any land lying southwardly of the branch except Jerusalem, and the portions of Parsons' Outlet so designated on the plot.

The clauses of his will under which this controversy arises are:—1st. "I give and devise unto Sydam H. Mills, son of David Mills, all my land which lies on the south side of the county road leading from Salisbury to Dirickson's Cross-Roads, called Parsons' Outlet, or by whatsoever name or names the same may be known or called, except so much of said land as lies on the south side of Beaver Dam Branch;" and 2nd. "I give and bequeath unto George Walston all the lands I own on the south side of Beaver Dam Branch, to him, his heirs and assigns, forever."

The appellant claims title under item second of the will and the defendant under first.

There is a good deal of proof, both written and oral, as to the location of Beaver Dam Branch. It is not necessary that it should be set out in detail. It is sufficient to say that some of the witnesses prove the stream, in its entire length, was called and recognized as Beaver Dam Branch, whilst others

prove that that part of it above the forks, designated on the plat, was known by a different name, and that it was only to that portion of it lying below the forks to which the designation of Beaver Dam Branch was applicable.

In this state of case, at the trial below, the plaintiff asked of the court three instructions, all of which were refused. They in substance are as follows:—The first asked the court to say to the jury, that if they should find the stream located by the plaintiff as Beaver Dam Branch, such in point of fact, and that the tract of land called Jerusalem lies on the south side of it, then the plaintiff was entitled to recover. The second asked that the court should say that, according to the true construction of the will of Jonathan S. Parsons, all his lands which lie to the southward of Beaver Dam Branch, or of any part thereof passed by said will to the plaintiff; and the third is the same as the second, except it puts it to the jury to find from the evidence in the cause the land lying south of Beaver Dam Branch.

It is the refusal of the court to grant either of these prayers, which constitutes the exception of the appellant.

It is clear to our minds that the land involved in this controversy did not pass under the first item of the will. The land there referred to is "*Parsons' Outlet.*" It is true the language is "Parson's Outlet, or by whatsoever name or names the *same* may be known or called." The word same evidently refers to "Parsons' Outlet," and the words "or by whatsoever name or names the same may be known, do not point to any other tract, and find an explanation in the fact that the patent for the tract called "Parsons' Outlet" was a resurvey of six smaller tracts, called "Nelms Meadows," "New Holland," "Wolf Pit," "Bacon Quarter," "Partnership," "Eagles Addition," with vacancies added. The land not passing under the first item, the next and main question in the case is, whether it passes under the second, for if it does not the plaintiff has no standing in court.

It is a well established canon of construction, that the intention of the testator is to govern when it is not in conflict with some principle of law. *Berry vs. Berry*, 1 *H. & J.*, 421.

Under the second item of the will in this case, it is manifest it was the intention of the testator to give to the plaintiff all his lands lying "on the south side of Beaver Dam Branch." The language is too explicit to allow of doubt as to his intention. The only difficulty arises from the fact that the evidence shows there is a difference of opinion as to the true location of the stream, and the question therefore is, how is that difficulty to be removed? In other words, whether it was competent for the jury to find from the evidence the true location of the Beaver Dam Branch and the lands owned by the testator lying south of it? If they had the right, then it is too plain for argument that the true construction of the will gave to the appellant all such lands as they should find so situated.

It is a principle of construction that where a given subject is devised and there are two pieces of property, the one technically and precisely corresponding to the description in the devise, and the other not so completely answering thereto, the latter will be excluded. 1 *Jarman on Wills*, 720. This principle has been invoked by the appellee, on the ground that the second item of the will would be completely gratified by giving to the appellant those portions of Parsons' Outlet which lie southwardly of Beaver Dam Branch, below the forks. This undoubtedly is so if those portions of Parsons' Outlet be "*all*" the lands which the testator owned which are south of the branch; but if they are not *all*, then they would not gratify the requirement of the second item of the will. But we have no doubt about the right of the plaintiff to introduce evidence to show the true location of the lands and of the branch. The rule is this: where the language of the testator is plain and unambiguous such language must govern, and therefore extrinsic evidence is inadmissible to show that he *meant* something different from what his language imports; but any evidence is admissible, which, in its nature and effect, simply *explains* what the testator has written; "in other words, the question in expounding a will is not what the testator meant? as distinguished from what his words express; but simply what is the meaning of his words? And

extrinsic evidence, in aid of the exposition of his will, must be admissible, or inadmissible with reference to its bearing upon the issue which this question raises. *Wigram's Rules of Law*, 9. So again proposition fifth of the same author, which is, that, "for the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to *identify* the person *or thing* intended by the testator, or to determine the quantity of the interest he has given by his will."

In this action it is incumbent on the plaintiff to show the land which he claims, to be "on the south side of Beaver Dam Branch." To do this he must locate this branch and also the land. The defendant may dispute his location of either or both, and the questions that thus arise are questions of *fact*, which are to be determined by proof, and to be passed upon by the jury as in any other case. *Goodtitle on Demise of Radford, vs. Southern*, 1 *Maule & Selw.*, 299. 1 *Greenleaf's Ev.*, secs. 287, 288. The plaintiff's first prayer leaves to the jury to find the location of Beaver Dam Branch, the property in dispute, and the ownership of it by the testator at the time of making his will and of his death; and on these facts being found in conformity to the theory of the prayer, as a conclusion of law flowing from them, pronounces the right of the plaintiff to recover. This we think was correct and ought to have been granted. The objection urged to the prayer on behalf of the appellee was, that it ought to have left to the jury the *intention* of the testator in the use of the words. This we have already shown cannot be done when the language is plain and unambiguous. The only purpose for which extrinsic evidence could be introduced, is to point out the *thing* devised or the object of the bounty of the testator. The same author, to whom we have referred at page 87, pur-

39      v.5

suing the inquiry involved in the suggestion, says: "The question, therefore, in its extreme form is, whether the courts can admit evidence which, *passing by the written will*, makes the *intention* of the testator—as *an independent fact*—the direct and immediate subject of proof; in other words, whether a nuncupative will may be added to a written will? The rule of the common law and the letter of the statute both require that the answer to this question should be in the *negative.*"

, The other two prayers are but corollaries from the first, and like it, we think, should have been granted.

<div align="center">

*Judgment reversed and procedendo awarded.*