GEORGE WARNER, JUN'R, *vs.* GEORGE MILTENBERGER'S
LESSEE.

WILL: DEVISE—CONSTRUCTION OF: EXTRINSIC EVIDENCE.—Where a testator devised a "*lot of ground lying on the east side of Leadenhall street in Ridgely's Addition to Baltimore Town,*" HELD:

That it was competent to show, by testimony derived from other parts of the will, and by extrinsic evidence explaining the sense in which the testator used the word *lot;*—that it embraced a larger parcel of ground, and was not intended to refer to the small sub-divisions designated as *town lots* on the plat of Ridgely's Addition to Baltimore Town.

PRACTICE IN COURT OF APPEALS.—Where a question proper for the Court to decide, is submitted to the jury, this will be no ground for reversal, if the appellate Court on examination of the evidence shall come to the same conclusion reached by the jury.

CONSTRUCTION OF WRITTEN PAPERS: PROVINCE OF COURT AND JURY.—It is the general rule that the construction of a will or any other written paper, is for the Court and not the jury.

——: ——: LATENT AMBIGUITY: PAROL EVIDENCE.—That the construction of written documents is a matter of law, and is not in ordinary cases to be submitted to the jury as a matter of fact, is true; but where the doubt is produced by the existence of collateral and extrinsic facts, not appearing upon the instrument, its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for by a recurrence to the state of facts as they existed when the instrument was made, and to which the parties are to be presumed to have reference. The ambiguity in such case is a latent one, which may be explained by parol evidence, and submitted to the jury.

APPEAL from the Superior Court of Baltimore City:

The appellee in this case instituted an action of *ejectment* in the Superior Court of Baltimore City, on the 15th of June 1848, to recover an undivided moiety of certain grounds in said city, described in the declaration, basing his claim upon a clause in the will of George Warner, which, with a statement of the material facts of the case, is set forth in the opinion of this Court.

After all the evidence on both sides had been given to the jury, the plaintiff offered two prayers, the first of which was not objected to by the defendant. By the second, he asked the Court to instruct the jury, " that he is entitled

to recover, if they find from the evidence that the word *'lots'* in the devise, *was meant* by the testator as to the part lying west of Leadenhall street, to describe all his *contiguous parcels* of ground extending from Leadenhall street west to Sharp street.''

And the defendant offered the following prayer: ''That if the jury shall find that in the year 1783, the commissioners of Baltimore Town, pursuant to the powers vested in them by the Act of the General Assembly of Maryland, passed at November session 1782, chapter 8, given in evidence, did cause the lands in said Act mentioned or parcels thereof, to be surveyed and laid out into lots, streets, lanes and alleys, and did cause an accurate and correct survey and plat to be made of the lands so laid out, and of the lots, streets, lanes and alleys so laid out by them, and that the said plot and proceedings of the commissioner are of record amongst the records of said town, and that the said lots, streets, lanes and alleys so laid out by the said commissioners, are truly located by the defendant on the plots in this cause, and that Leadenhall street, Chesnut street, Paca street, John street, Peach alley, Plumb alley and Cecil alley, as laid out by the said commissioners and shown upon the plots in this cause, have ever since they were laid out as aforesaid, been deemed and taken by the public authorities to be dedicated to public use as highways; and if they shall further find, that at the time of making his last will and testament, as given in evidence in this cause, the said George Warner had notice that the above named streets and alleys had been laid out by the commissioners of Baltimore town as aforesaid, and had notice of the true location of said streets, lanes and alleys, then the plaintiff cannot recover, in this action, any part of the land described in his declaration, and located on the plats in the cause as his claim and pretensions under the devise made by the said last will and testament of the said George Warner, deceased, which is referred to in the first prayer offered on the part of the plaintiff.''

34    v. 21

This appeal is taken by the defendant from the action of the Court below, (LEE, J.,) in granting the second prayer of the plaintiff, and in refusing to grant the prayer of the defendant.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Thos. S. Alexander* and *Wm. J. Ward,* for appellant:

I. We maintain that there was no need, and therefore, no right, to adduce testimony *dehors* the particular devise, to define what was given by it; or, at least, to show that what is claimed by the plaintiff's pretensions is not given; and we assert the proposition, that where there is found a subject to fulfill the descriptive words of a devise, no testimony to enlarge it is admissible; however, even such further interest might, by testimony, be made to appear to be probably within the testator's purpose, and be even in some sense consistent with his words in the devise. This is a rule rigidly absolute as a cherished principle in the law of wills.

II. This case presents no *latent ambiguity,* the only kind of ambiguity which can justify explanatory or identifying testimony. If there is ambiguity it is patent on the face of the devise connected with its appendage, the "Ridgely Addition" plat, virtually embodied with it. Even in cases of latent ambiguity, which must be created from evidence *aliunde* the devise, the jury have but the privilege to find the facts which are within the doubt so raised; and the Court, as the exclusive authority, declares then the import of the devise, as to the party to be benefited, or thing intended to be given. The only doubt that presents itself here, is that already alluded to, and is as to what particular lot, to be shown in "Ridgely's Addition," between Leadenhall street and Peach alley, can be considered as devised; on which doubt supervenes the question whether for that uncertainty the devise be not *void.* That uncertainty will

not be pretended to be a latent ambiguity, and, within the principle of such ambiguity, to legitimate testimony of the intention of the testator; or, as the cases say, "to annex a *nuncupative* will to the recognized written will," which is in effect sought to be done here by the appellee.

III. The plaintiff's second prayer was manifestly wrong in putting it to the jury to find what was "meant" to be devised by the testator, that being the province of the Court, not of the jury.

In support of these propositions, they referred to the foling authorities: 1 *Greenlf. Ev.*, sec. 289, *note, and cases there cited. Cheyne's Case*, 5 *Coke*, 58. *Doe Dem. Chichester vs. Oxenden*, 3 *Taunt.*, 147. *Id.*, 4 *Dow.*, 65. *Jarm. on Wills*, 352, 353, 676, &c.—(*Perkins' Edn. I.*, 357, 358.) *Brown vs. Brown*, 11 *East.*, 441. *Douglas vs. Blackford*, 7 *Md. Rep.*, 8. *Stokeley vs. Gordon*, 8 *Md. Rep.*, 505. *Willson vs. Gomparts*, 11 *Johns.*, 213. *Wigram on Wills*, 55, 59, *t. p. Hill's Lessee vs. Hill*, 5 *G. & J.*, 98. *Perry vs. Hunter*, 2 *R. I. Rep.*, 80. *Holton, et al., vs. White & Wife*, 3 *Zabriski*, 330. *Hiscocks vs. Hiscocks*, 5 *Mees. & Wels.*, 371. *Walston's Lessee vs. White*, 5 *Md. Rep.*, 305. *Cresswell vs. Lawson*, 7 *G. & J.*, 227. *Mitchell vs. Mitchell*, 2 *Gill*, 231. *Ryall vs. Bell, et al.*, 8 *T. R.*, 579. *Hollins vs. Coonan*, 9 *Gill*, 62. *Tolson vs. Tolson*, 10 *G. & J.*, 174. *Druce vs. Denison*, 6 *Ves.*, 385. *Ashforth vs. Bower*, 3 *Barn. & Adol.*, 453. *Tyrrell vs. Lyford*, 4 *Maule & Selwyn*, 550. *Browne vs. Greening*, 3 *Id.*, 171.

*J. Mason Campbell* and *Bernard Carter*, for the appellee:

I. Was the ascertaining of the intention of the testator as stated in the plaintiff's 2nd prayer, properly left to the jury.

1st. Where, in a will, it is doubtful what meaning the testator attached to a certain word in any one clause, and there is not enough in that clause to determine this meaning, other clauses in the same will may be examined, and.

if the word is there used in a certain sense, or as designat-: ing a certain thing, this meaning will be attached in the doubtful clause, unless a contrary intent appears. *East vs. Twyford*, 31 *Law & Eq. Rep.*, 81, (*Ld. Brougham.*) *Page vs. Page*, 6 *Id.*, 346. *Eliot vs. Carter*, 12 *Pick.*, 443, 444. *Wigram on Wills*, 1st *Prop.*, (*quoted in* 1 *Greenlf. Ev.*, secs. 286 and 287, *note.*)

2nd. The intention of the testator is the polar star by which, in the construction of wills, the course of the Courts is to be governed. And this intention must be ascertained from the language of the will, aided by evidence of the actual situation of the external objects to which this language is intended to apply. *Eliot vs. Carter*, 12 *Pick.*, 441. *Hiscocks vs. Hiscocks*, 5 *Mees. & Wel.*, 363, 367, (*Ld. Abinger.*) *Walston vs. White*, 5 *Md. Rep.*, 297, 304, 305.

For the purpose of determining the subject of the testator's bounty, or the quantity of interest intended to be given by the will, the Court will inquire into every material fact relating to the property which is claimed as the subject of the devise, to the circumstances of the testator and his family affairs, for the purpose of enabling the Court to identify the thing intended by the testator, or determine the quantity of interest given under the will. The same is true of every other disputed point, respecting which it can be shown that a knowledge of extrinsic facts can in any way be ancillary to the right interpretation of a testator's words. *Wigram's* 7th *Prop.*, (*quoted in* 1 *Greenlf. Ev.*, sec. 287, *note.*) *Miller vs. Travers*, 8 *Bing.*, 244.

Authorized by these principles of law, the plaintiff in order to show that the word *lot* was used by the testator in the devise to the Miltenberger children, in the large sense indicated above, offered in evidence:

1st. Other devises of parts of the "lot or tract" in "Ridgely's Addition," (the lot we designate as the Latimer lot.)

2nd. The condition and situation of this tract or "lot," and its surroundings.

Warner *vs.* Miltenberger's Lessee.

3rd. Devises of other parts of his land similarly situated.

There is in the evidence in the case ample material from which the jury could legally find that the testator intended to embrace, in his devise to the plaintiff and his sister, all his ground extending from Leadenhall to Sharp streets.

The question remains, was the jury the proper tribunal to pass on this question? That it was, is fully shown by the following cases: *Walston vs. White*, 5 *Md. Rep.*, 305. *Dorsey vs. Hammond*, 1 *H. & J.*, 201. *Wooster vs. Butler*, 13 *Connecticut*, 309. *Goodtitle vs. Southern*, 1 *Maule & Selw.*, 299, 301. 1 *Greenlf. Ev.*, sec. 276, *note.*

2nd Question. Supposing the intention found as put in the prayer, are the words of the devise sufficient in law to support the devise, that is, to give effect to the intention? Clearly so. As above said, the word *lot* is a comprehensive word, and according to its definition amply sufficient to take in all the ground embraced in the plaintiff's claim and pretensions.

It is clear, then, that according to the well established rules of law this devise is valid, because the words of the will, aided by evidence of the material facts of the case, are amply sufficient to determine the meaning of the testator in the clause in question. *Wigram on Wills, 5th and 6th Props.* 1 *Greenlf. Ev.*, secs. 286, 287, 288, *and note to sec.* 290.

But if we should be wrong in our argument, that the question was rightly left to the jury, and that it was the province of the Court to determine the question left by the prayer to the jury, still it is plain from the preceding argument that the Court would come to the same conclusion as did the jury, and therefore there would be no cause for a reversal.

*Lastly.* We contend that the defendant's prayer was erroneous, because it took from the jury the determination of what land the testator intended to give, which was error. *Walston vs. White*, 5 *Md. Rep.*, 305.

BARTOL, J., delivered the opinion of this Court:

The decision of this case depends upon the true construction of the following clause in the last will of George Warner, late of Baltimore City:

"I give, devise and bequeath to my grandchildren, George and Catharine Miltenberger, their heirs and assigns forever, as tenants in common, my two lots of ground lying on the east and west sides of Leadenhall street, in 'Ridgely's Addition' to Baltimore town, (now city.)"

The testator died in 1829. The will bears date March 3rd, 1827, with a codicil dated June 20th, 1829, and was admitted to probate in July 1829.

The lessor of the plaintiff is grandson of the testator, and one of the devisees named in the above clause of his will, under which he claims the property in controversy in this case. The defendant (now appellant) claims as residuary legatee under the former will; and the question between the parties is, what extent of ground passed by the devise?

By agreement of counsel, a warrant of resurvey was issued to lay down the land claimed, and such other lands or lots as either party might wish located; but as both claimed under the same testator, no location as to title prior to his need be made. It was also agreed that duly certified extracts of deeds, leases, &c., and any original deeds and plats in the possession of the testator at the time of his death, and sale-plats by which he purchased land, might be used for the purpose of location, and as evidence at the trial, in the place of more formal papers.

The warrant of resurvey was issued, executed and returned with plats, locations and explanations under instructions of the respective parties. Defence was taken for all within the plaintiff's claim and pretensions, as delineated on the plats; and on the trial in the Court below, a verdict was rendered in favor of the plaintiff for the ground claimed, with nominal damages.

The plaintiff offered two prayers, and the defendant one prayer. The plaintiff's first prayer was granted *by consent;* the defendant objected to the second prayer; but the Court below granted that also, and rejected the defendant's prayer; and the only exception taken below, and brought up by this appeal, was taken to the granting of the plaintiff's second prayer, and the rejection of the defendant's prayer. These prayers will be found *ante,* pages 264 and 265, and will be more particularly noticed hereafter.

The case has been argued with very great care and ability, and in expressing our judgment upon the material questions involved, we are much aided by the clear, careful and elaborate exposition of the case furnished by the printed briefs and oral arguments of counsel; and have found less difficulty in reaching a satisfactory conclusion, than in expressing in a brief and intelligible manner the grounds upon which that conclusion is based. This grows out of the great number and variety of facts embraced in the bill of exceptions, and the number of locations presented by the plats, all of them tending to illustrate the meaning of the words of the will, and designed to show the real intent of the testator in the devise in question—that is, the sense in which the testator used the word *"lot"* in the devise—upon which the whole controversy turns. The appellant contending that the word must be construed to mean a parcel of ground marked and defined on the plat of "Ridgely's Addition" to Baltimore town, as the same was made and adopted by the public authorities, bounded and circumscribed by streets, lanes and alleys, as located on the plat, and designated by numbers, commonly known as a building lot. That this is the legal construction of the word, and that no evidence can be introduced to show that the testator used it in any other sense. While the appellee contends that it is competent to show by testimony, derived from other parts of the will, and by extrinsic evidence, explaining the sense in which the testator used the word *lot,* that it embraced a

larger parcel of ground, and was not intended to refer to the small subdivisions designated as town lots on the plat of "Ridgely's Addition to Baltimore Town."

We think it is clear upon established precedents and authority, that it was competent for the appellee to introduce, for this purpose, the evidence contained in the bill of exceptions.

Much learning and ability have been expended, both by Courts and elementary writers, in considering the question of resorting to extrinsic evidence for aid in the interpretation of wills, and the rules and principles governing this interesting branch of the law, may now be considered as defined and established with as much precision as the subject is capable of. They are very clearly stated in the excellent work of *Mr. Wigram*, published in the 2nd vol. of the Library of Law and Equity, and also in the 1st vol. of *Greenleaf's Ev., ch.* 15. For the rules more particularly applicable to this case, we refer to the 1st, 5th and 7th propositions of *Wigram*, to 1 *Greenleaf*, secs. 286 to 289 inclusive; and to the very able and learned opinion of *Lord Abinger,* in *Hiscocks vs. Hiscocks,* 5 *Mees. & Wels.,* 363, in which the previous decisions are elaborately examined, and the true rules and principles of the law are stated with great clearness and precision.

For the purposes of this case, however, it is sufficient to refer to the decision of the Court of Appeals in *Walston's Lessee vs. White,* 5 *Md. Rep.,* 297, where the rule is thus succinctly stated: "Where the language of the testator is plain and unambiguous, such language must govern, and therefore extrinsic evidence is inadmissible to show that he *meant* something different from what his language imports; but any evidence is admissible, which, in its nature and effect simply *explains* what the testator has written; in other words, the question in expounding a will, is not what the testator meant, as distinguished from what his words express; but simply what is the meaning of his words. And extrinsic evidence, in aid of the exposition of his will, must

be admissible or inadmissible with reference to its bearing upon the issue which this question raises." *Wigram's Rules of Law*, 9.

In the same case the Court of Appeals recognise and adopt the rule stated by *Mr. Wigram* in his 5th proposition. (See 5 *Md. Rep.*, 305.) Under that rule it is clear, that the evidence contained in the exception before us was properly admitted for the purpose of determining "the subject of disposition, or the quantity of interest intended to be given by the will," or to identify the thing intended by the testator to pass under the devise of his "two lots of ground lying on the east and west side of Leadenhall street."

This evidence was submitted to the jury by the second prayer of the plaintiff, and they found by their verdict, that the testator's lot of ground lying on the west side of Leadenhall street given by the will, embraced all that parcel of ground claimed in the plaintiff's pretensions, and located on the plats, extending from Leadenhall street, to Sharp street, (formerly Chestnut street.)

One of the objections to the second prayer, urged by the appellant in this Court, was that it erroneously submitted to the jury a question of law, which it was within the province and duty of the Court to decide. It is the general rule that the construction of a will, or any other written paper, is for the Court and not the jury, and in conformity with this rule, the Superior Court properly instructed the jury in the first prayer, which was granted by consent, that, by the true construction of the devise, the devisees took all the testator's *lot* on the west side of Leadenhall street.

Then the question arose, what was the true location and extent of the *lot* devised ? or in what sense was the word *lot* used in the will ? Whether this was a question for the Court or the jury, is not very important in this case; because an examination of the evidence, adduced in aid of the construction of the will, has brought us to the same con-

clusion reached by the jury. And even if the appellant were correct in the view, that the question was for the Court, and not the jury, still entertaining the opinion already expressed, this would be no cause for reversal, under the well settled rule of practice, which was distinctly recognised by this Court in the case of *Hanson vs. Campbell's Lessee*, 20 *Md. Rep.*, 223, decided at the last June term.

But, in our opinion, this question as it arose in this case, was properly submitted to the jury. In support of this view we refer to the case of *Wooster vs. Butler*, 13 *Con.*, 309, where the point was carefully examined, and decided in accordance with what we consider the weight of authority. That case involved the construction of a grant, and the Court say: "That the construction of written documents is a matter of law, and is not in ordinary cases to be submitted to the jury, as a matter of fact, is true; but where the doubt is produced by the existence of collateral and extrinsic facts, not appearing upon the instrument, its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for, by a recurrence to the state of facts as they existed when the instrument was made, and to which the parties are to be presumed to have reference. The ambiguity in such case, is a latent one, which may be explained by parol evidence and submitted to the jury."

See also the cases of *Goodtitle vs. Southern*, 1 *M. & S.*, 299, 301; *Dorsey vs. Hammond*, 1 *H. & J.*, 201, and *Walston vs. White*, 5 *Md. Rep.*, 305.

The second prayer of the plaintiff having been properly granted, it follows, that there was no error in refusing the defendant's prayer; which asked the Court to withdraw from the jury the determination of the question as to the true intent and meaning of the word "*lot*," as used in the will, and to pass upon that question exclusively upon the consideration of the facts enumerated in the prayer; leaving out of view a large part of the testimony, which was

pertinent and material to the right determination of the question.

*Judgment affirmed.*

(Decided April 14th, 1864.)

