PHILIP HAWMAN and MARGARET, his Wife, and others *vs.* DAVID THOMAS, Executor of PETER THOMAS of G., GEORGE W. CROMWELL, and others.

*Construction of a clause in a Will—Extrinsic evidence Inadmissible to show what property was Intended to be embraced in the clause of a Will—Clause of a Will defective, but not wholly Void—When words may be Supplied in a Will.*

A will contained the following clause: "Second.—I give and bequeath unto Geo. W. Cromwell, Rachel C. Suman, and the children of Mary Dutrow (dec'd.) late (her share to be equally divided) wife—Joseph L. Dutrow, and Mrs. Margaret E. Dutrow, now of Baltimore, all children of my beloved wife (dec'd.,) the three first named, viz., Mr. Geo. W. Cromwell, Mrs. Rachel C. Suman, and the children of Mr.-Mary Dutrow (dec'd.,) they to have their mother's share equally divided. The three shares to be equal, and Mrs. Margaret E. Dutrow, wife of George W. Dutrow, to have half as much as either of the three first (named children of my beloved wife, dec'd.,) including all money due me by note or otherwise, by either of the above named parties or their husbands, which—to be deducted from their respective shares. Mrs. Margaret E. Dutrow's legacy to be held in trust for the use of the aforesaid Margaret E. Dutrow, by the trustee hereinafter named for that purpose, the said Margaret E. Dutrow to receive annually from said trustee the interest thereon at six per cent. per an-um during her natural life, after her death this legacy to pass to her children, equally distributed." HELD:

1st. That the foregoing clause was defective by reason of the failure or omission to state therein any property upon which the bequest could operate, and there were no words or expressions elsewhere in the will by which the omission could be cured.

2nd. That extrinsic evidence was not admissible for the purpose of showing what property was intended to be embraced in said clause.

3rd. That the clause was not wholly void; but was valid and operative to give to the parties therein named the amounts of the debts due by them respectively to the testator.

Words can never be supplied in a will, except when it is certain beyond reasonable doubt, what particular words were omitted; and this certainty must be reached by a construction of the terms of the will.

APPEAL from the Circuit Court for Frederick County, in Equity.

This appeal was taken from the decree of the Court below, refusing the injunction prayed for by the complainants, and dismissing their bill. The case is stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON and MILLER, J.

*Wm. P. Maulsby, Jr., John Ritchie* and *I. Nevett Steele,* for the appellants.

The simple and only inquiry here is, whether from an examination and construction of the instrument itself, aside from parol evidence of intention, it manifestly appears that the testator has in said will *unmistakably indicated* and *substantially expressed* the intention to bequeath all the residue of his property, beyond that disposed of in the first, third and fourth items to the appellees; that all this is so apparent, that the introduction of the words, "balance of my personal estate," in the second clause, would be inserting only what is in effect already there by necessary implication; that no other subject of disposition could have possibly been intended, and that the Court is constrained so to declare, to the disinherison of the heirs-at-law? *Allen's Ex'rs vs. Allen, et al.,* 18 *Howard,* 393; *Smith vs. Bell,* 6 *Peters,* 75; 1 *Redf. on Wills,* 466-7-9 *and notes; Wigram & O'Hare,* 2nd *part, page* 40; 1 *Redfield on Wills,* 453, 454; 1 *Redfield on Wills,* 454-463-5-6; *Creswell vs. Lawson,* 7 *G. & J.,* 227; *McKeehan vs. Wilson,* 53 *Penn. St.,* 74.

Extrinsic evidence is permissible only to explain a latent ambiguity, which arises from facts *de hors* the instrument. *Roberts on Frauds,* 16, 19; 1 *Greenleaf on Ev.,* 287-8-9, 90; *Wigram's Prop., VII;* 1 *Jarman on Wills,* 316-17-18, 330, 346-7-8; 2 *Wms. on Ex'rs,* 989, 990, *et seq.,* 1032,

1034; *Wigram & O'Hara, Part* 1, 205, 220, *Part II*, 57, 58; *Negro Cæsar vs. Chew,* 7 *G. & J.*, 127.

The difficulty in the second clause of the will in controversy, does not spring from an ambiguous expression, a misdescription, an equivocation, or in finding a proper subject-matter for language in itself intelligible, or from any of those circumstances *de hors* the instrument which sometimes embarrass the application of a testamentary intention, proper and effectual in form; but the clause is absolutely null and ineffectual, because of a bald, unqualified omission to mention any property whatever, directly or indirectly, as the subject of its disposition.

It is such an instance of omission, as the overwhelming weight of authority, both in England and in this country treats as incurable, and to remedy which parol evidence is pronounced inadmissible. 1 *Jarman on Wills*, 347; *Fawcett vs. Jones*, 3 *Phil.*, 488.

In the case of the Earl of Newburg, in copying the will, the word "Gloucester" was left out by mistake. Parol evidence was offered to supply the omission, but refused with the remark, "to assume such jurisdiction would be to repeal the Statute of Frauds, and encourage the evil it was designed to prevent." 5 *Maddock's Rep.*, 364.

In *Hunt vs. Hort*, 3 *Brown Ch.*, 311, it was ruled that "a gift by will, of pictures to Lady ——— is absolutely void, and shall not go to the master, or be supplied by parol evidence."

In *Mohun vs. Mohun*, 1 *Swanston*, 201, the words in question were, "I leave and bequeath to all my grandchildren, and share and share alike." The bequest was declared void for uncertainty. Parol evidence was offered to show what was intended, and the Court was asked to transpose the words, "to all," by simply reversing their order; but the Court held it was a case in which there could be neither transposition, nor supplying of words to

make the will effective.   See also *Hay vs. Earl of Coventry*, 3 *Durnford & East.*, 85 ; *Hiscocks vs. Hiscocks*, 5 *M. & Welsby*, 362 ; *Flint vs. Hughes*, 6 *Beavan*, 342 ; *Miller vs. Travers*, 8 *Bingham*, 244 ; *Adams vs. Jones*, 9 *E. L. & Eq.*, 269 ; *Douglas vs. Fellows*, 23 *Eng. L. & Eq.*, 240 ; *Tucker vs. Seaman's Aid Society*, 7 *Metcalf*, 205, 206, 207, 208 ; *Mann vs. Mann*, 1 *Johns. Ch.*, 231 ; *Crocker vs. Crocker*, 11 *Pick.*, 257 ; *Brown vs. Thorndike*, 15 *Pick.*, 400 ; *Worman vs. Teagarden*, 2 *Ohio St.*, 381 ; *Kinsey vs. Rhem*, 2 *Iredell*, 192 ; *Jackson, ex dem. Van Vichten vs. Sill*, 11 *Johnson, N. Y.*, 201 ; *Mann vs. Mann*, 14 *Johnson*, 1 ; *Hyatt vs. Pugsley*, 23 *Barbour*, 291 ; *Abercrombie vs. Abercrombie*, 27 *Ala. N. S.*, 495 ; *Wootton vs. Redd's Ex'r*, 12 *Grattan*, (*Va.*,) 206-7-8 ; *Kelley vs. Kelley*, 25 *Penn.*, 460 ; *Beall vs. Holmes*, 6 *H. & J.*, 224, 228 ; *Bowly's Lessee vs. Lammot*, 3 *H. & J.*, 4 ; *Fouke vs. Kemp's Lessee*, 5 *H. & J.*, 135 ; *Trippe.vs. Frazier*, 4 *H. & J.*, 446 ; *Dougherty vs. Monett's Lessee*, 5 *G. & J.*, 459.

In *Marshall vs. Haney*, 4 *Md.*, 506, the Court defines what constitutes a patent and a latent ambiguity, respectively, and the office of parol evidence in connection therewith.   The second clause in Peter Thomas' will, if it presents an ambiguity, and is not an absolute blank, is clearly an instance of *patent*, as contradistinguished from *latent* ambiguity, as the difficulty is presented on the face or structure itself of the will.   It is laid down in *Marshall vs. Haney*, that *patent* ambiguities appear on the face of the writing itself, and as a general rule cannot be explained or removed by extrinsic evidence.   In such a case, the Court is to ascertain *the meaning of the words actually employed*, not the *secret* intention of the party as contradistinguished from what *his words import*.   Latent ambiguities are *first created* by *extrinsic* evidence, which *afterwards* renders extrinsic evidence necessary to explain or reconcile them.   See also *Walston's Lessee vs. White*, 5 *Md.*, 304-5.

The case of *Harris vs. Pue, Adm'r, &c.,* 39 *Md.,* 548, has resemblance to the case at bar. In that case, the rest of the will was sustained, notwithstanding some unfilled clauses of bequests, which were blank as to the subject of the gifts. The Court says : " In such case, the existence of the blank does not defeat the will, but the *particular bequests* to Father Griffin, Father Chappel and Hettie Shields, *being in blank, must fail for uncertainty ;* the other bequests being *clearly expressed,* and being in no manner connected with or dependent upon those in blank, must have effect. This rule is clearly stated by all the Judges in *Tilghman vs. Stewart,* 4 *H. & J.,* 156."

Looking to the will itself of Peter Thomas, can the Court positively declare, that from the face of that instrument it manifestly appears, that the will of the testator was to bequeath to the appellees the property they claimed, to the disinherison of the heirs ; that the testator *has used* words *apt* and *adequate* to express that intention ; that the second item embracing the alleged bequest was designed to operate as a residuary clause ; that the omission of a subject of disposition therein, is not a substantial defect, but a mere verbal slip ; that the only words that correspond to the plainly disclosed intention of the testator are, " the balance of my personal estate ; " that it is impossible he could have contemplated any gift or bequest other than these words import, and that therefore they should be inserted in the will ?

Of course, if the Court shall deem that the omission in the will, in the present instance, is of such a character, and relates to such a subject-matter that it cannot be supplied at all —as we respectfully submit is the rule— that will be conclusive of the appellees' case. And further, if the testator has not *manifested* his intention to give something to the appellees, *in the will itself,* no matter what his actual intention and desire may have been, the clause must fail. Or if the Court shall believe that some-

thing else than "the balance of my personal estate," are the proper words to fill up the omission, or shall be in doubt whether some other kind or amount of property *might* not have been in the testator's contemplation, or shall not be absolutely convinced that the words mentioned are the true and intended ones to the exclusion of all others, the judgment below cannot be sustained.

That Peter Thomas *intended,* so far as mental purpose is implied, and as that term is understood in its popular signification, to leave a portion of his property to the appellees, there can be no reasonable question, but that he has duly manifested and effectuated such intent in his written will, or that it can be unequivocally gathered from a legitimate construction of the will itself what part of his estate he intended they should have, is confidently denied.

From an inspection of the face of the will itself, nowhere is it manifested, and by no construction can it be gathered, what was the subject of disposition omitted from the second clause. The clauses of the will are independent of each other, and relate to different subject-matters.

*James McSherry, M. G. Urner* and *William M. Merrick,* for the appellees.

If the clause in question be uncertain, it can only be so in regard either to the persons intended to take under it, or the thing or subject-matter intended to be given. The legatees, the persons intended to take, are named and described in the clause in question ; they are the children and grandchildren of the testator's wife ; there is no uncertainty in reference then to the persons intended to take.

If an uncertainty exist at all, (supposing there was an intention on the part of the testator to give *something* by this clause,) it must be an uncertainty in respect to the subject-matter which the testator meant to dispose of—in respect therefore to his *intention.*

The inquiry then is, what was the testamentary intention of Peter Thomas, of G., not as an independent fact, but as appearing on the face of the will, in respect to the property designed to be disposed of by the second clause of the will? If absolute certainty were required, there never could be a question in regard to the true construction of a will, because the mere suggestion of a doubt with respect to its meaning would exclude an absolute certainty in the premises, and consequently, avoid the will on the ground of uncertainty. But, as doubts do frequently arise, and as uncertainties are often encountered, which Courts are constantly obliged to solve, and in doing so, to ascertain the meaning and intention of the testator, it is proper to inquire:

1st. What are the rules resorted to by the Courts in the construction of wills, and therefore in the ascertainment of the testator's intention?

2nd. What is the *effect* of that intention when discovered?

3rd. What is the intention to be gathered from the will in this case, either from the face of it alone, or from the face of it viewed in the light of surrounding circumstances?

4th. What, when the intention is discovered, the Court will do to carry it into effect?

1st. Intention is a mere act of the will, and its existence is manifested only by its results. *Exteriora acta indicant interiora animi secreta.* Consequently, the intention of a testator is to be ascertained from the *whole will taken together*. *Iglehart vs. Kirwan*, 10 *Md.*, 563; *Bowly's Lessee vs. Lammot*, 3 *H. & J.*, 7. The intention is also to be gathered from *all* the provisions of the will developed by the light of surrounding circumstances. *Taylor vs. Watson, et al.*, 35 *Md.*, 524; 1 *Phillip's Ev.*, 543, 544, 545. The Court must put itself in the place of the testator to see how the terms of the instrument affect the property or subject-matter. 1 *Greenleaf's Ev.*, sec. 287.

Therefore, if the will on its face does not display with sufficient certainty the testator's intention, it is competent to inquire into the surrounding circumstances to aid the Court.  *Smith vs. Bell*, 6 *Peters*, 75 ; *Wigram, Prop. V*, *side page* 51 ; *Ib., side page* 57, *placitum* 71.

2nd.  The intention when found, will control the construction of the testament.  *Smith vs. Bell*, 6 *Pet.*, 68 ; *Dashiel vs. Dashiel*, 2 *H. & G.*, 127 ; *Swinb. on Wills*, 10 ; *Saunders vs. Mathewson*, 11 *Conn.*, 149.

3rd.  What was the testamentary intention of Peter Thomas, of G.?  What did he intend, as indicated by the will itself, to bequeath to the children and grandchildren of his deceased wife?  What has he bequeathed to them according to the construction of his will?

The demurrer admits that the decedent stood towards the legatees named in the second clause of his will, in *loco parentis,* and was almost a stranger to the complainants. That he had no children of his own, and that the persons nearest and dearest to him, were the offspring of his wife. This is clear from the bill of complaint and the will, without regard to the answer.

It is shown by the answer, that the testator had real estate, and a large amount of personal property, consisting of mortgages, bonds, stocks and other securities.  It is manifest from the will, that of this real and personal property, he has only specifically given (1,) 66 shares of bank stock to his niece, Catharine Thomas, who lived with him, but is now dead ; (2,) all his real estate to his wife's grandson, Joseph Dutrow, (3,) and certain bed-clothing, &c., without declaring to whom.  Consequently, the great bulk, and far the largest and most valuable portion of his estate, consisting wholly of personal property, remains after deducting these, the only specific dispositions.

But aside from and independent of these circumstances, it is morally certain, from the face of the will, that he intended to give the parties named in the second clause of

his will *something;* otherwise they would not have been named therein, and *a fortiori* not in the manner they are named.   He certainly then intended to give them *something.*   What was it?   In the will itself, he has imperfectly, though sufficiently described it, because he has said :

That it was to be greater than the debts due by the legatees to him—those debts were to be *deducted* from the *shares* of each ; which could only be done where the thing deducted is less than that from which it is subtracted.

That that which he gave, in the second clause was something bearing interest—*was personal property*—because, he says, that the *share* of Margaret E. Dutrow shall be held in trust by his executor, and that she shall be paid six per cent. interest thereon during her life, &c.; and the same terms of description with reference to quality that are used to designate this one *share,* are in the same clause applied to the shares of the other legatees.   If these terms indicate that the one share is personal property, treating in the same connection of the other shares, and coupling them all together, the others must be of the same quality.   *Noscitur a sociis.*

That it was to be something divided into *four shares,* the one of which should be half as much as either of the other three, and the three others to be equal.   When devising, in the third clause, his real estate, he uses different language, showing thereby, that in the two clauses, he was not dealing with the same character of property.

It was something, one share of which, that is to say, one of the four shares into which the whole was divided in the proportion above stated, was to be held in trust for the period of a life, and then equally *distributed* to the children of the *cestui que trust.*

That it was something, one share of which he called a *legacy,* and that one share being a part of the whole, and designating by the description used, and the difference

between the one used and that employed when disposing of his real estate, only personal property, the whole, of which the *legacy* was a part, must be personal property.

That it was to be something not specifically given to others.

But he had nothing left to give, after satisfying the specific legacy of 66 shares of bank stock, and the devise of the real estate, except the personal property, of which he was possessed. He must have intended to give something that he had, because *nemo dat qui non habet.* Now, if he intended to give *anything,* (and that he did, is manifest from the fact of his naming the parties and making his will,) and if that intention is to be regarded, (and that it is, is apparent from the authorities before quoted,) then it is clear the balance of his property beyond that mentioned in the first, third and fourth clauses of his will, is that which he intended to dispose of, and did dispose of by the second clause, because there is nothing else upon which the will can operate. By operating on that balance it can prevail. *Siemer vs. Siemer, et ux.,* 2 *G. & J.,* 100; *Broom's Leg. Max.,* 238, *side page.*

Any other construction would cause the testator to die intestate of the *bulk* of his estate, *in spite* of his plain and unmistakable intention not to do so; and would, therefore, absolutely ignore and set at naught the justly controlling influence of that intention. *Creswell vs. Lawson,* 7 *G. & J.,* 245; *Chelton vs. Henderson's Lessee,* 9 *Gill,* 437.

4th. "To effectuate therefore the clear intention as apparent upon the whole will, words and limitations may be transposed, *supplied* or rejected." 2 *Williams on Ex'rs,* 1084, and authorities there cited; recognized and adopted in *Janney vs. Sprigg,* 7 *Gill,* 202, 210; *Hawkins on Wills, page* 4, *pro.* 4, *and cases in note* 2; *Clark vs. Tennyson,* 33 *Md.,* 82; *Redfield on Wills,* 454, 464, *(Edition of* 1864; *Hone vs. Van Schaick,* 3 *Barb. Ch.,* 488; *Parker vs. Tootal,* 11 *House of L. Cases,* 143.

Where the words used were "all my *personal* property," and it was clear beyond all doubt upon the face of the will, that the testator meant by those words, the *real* property over which he had an absolute present power of disposition, it was held that the freehold passed by this description. *Doe, dem. Tofield vs. Tofield,* 11 *East.,* 246; 2 *Williams on Ex'rs, side page* 709. The rule does not prescribe *what* words may be supplied, it merely provides that words which are *necessary* to effectuate the testator's intention will be supplied. The Court may also transpose words in a will. *Linstead vs. Green,* 2 *Md.,* 82.

With so clear an expression of the testator's intention, it is easy to supply the words necessary to make the clause in question what the decedent intended it to be, viz., a residuary clause. By supplying the words "balance of my personal estate," the whole will is made harmonious and the object of the testator gratified. As sustaining this construction see *Eatherly, et al. vs. Eatherly, et al.,* 1 *Coldwell, (Tenn.,)* 462, a case strongly resembling the one at bar; also, *Hawkins on Wills, page* 7, *and cases cited; Towns vs. Wentworth,* 11 *Moore's P. C. C.* 526; *Townsend vs. Downer,* 23 *Vermont,* 225; *Kellogg vs. Mix,* 37 *Conn.,* 243.

BARTOL, C. J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellants, claiming to be next of kin and distributees of Peter Thomas of G. deceased, for the purpose of enjoining the executor David Thomas from distributing the estate of the testator Peter Thomas of G. among certain supposed legatees, under the second clause of the will, which is alleged to be void for uncertainty, and wholly inoperative. Answers were filed alleging that the second clause of the will is valid and sufficient to give to the persons therein named, the whole residue of the property of the testator, not disposed of by the other clauses of the

will; setting out particularly of what the said residue consists, the same being personal property only, and alleging further the facts and circumstances outside of the will, tending to show that such was the intention of the testator, and the verbal declarations to that effect made by the testator immediately upon and at the time of executing the will.

The complainants demurred to the answers; and thereupon the following agreement was filed, signed by the solicitors of the parties:

"It is hereby agreed * * * * that the Court in deciding upon the demurrer, shall also decide whether the will upon its face is inoperative to pass all the estate of Peter Thomas of G.; and if so inoperative, whether it can be cured or interpreted by extrinsic evidence, and if so, by what evidence; and if the Court should decide that the defect, if any, can be cured, or the will interpreted by extrinsic evidence, it shall remand the cause to enable said testimony to be taken; and if the Court shall deem said will to be on its face incurably defective, or absolutely invalid, as it now stands, to pass all said estate, it shall pass a decree in the cause, which shall be in the nature of a final decree accordingly. All errors in pleading, in bill, answers and demurrer, &c., are hereby waived."

The complainants are the surviving sister of the testator, and the children and grandchildren of his deceased brother and sisters. The testator left no widow, children or descendants, the legatees mentioned in the second clause of the will being the children of his wife, by a former marriage, and the children of her deceased daughter Mary Dutrow. This clause is in the following words:

"Second.—I give and bequeath unto Geo. W. Cromwell, Rachel C. Suman, and the children of Mary Dutrow (dec'd) late (her share to be equally divided) wife—Joseph L. Dutrow, and Mrs. Margaret E. Dutrow, now of Baltimore, all children of my beloved wife (dec'd,) the

three first named, viz., Mr. Geo. W. Cromwell, Mrs. Rachel C. Suman, and the children of Mr.– Mary Dutrow, (dec'd) they to have their mother's share equally divided. The three shares to be equal, and Mrs. Margaret E. Dutrow, wife of George W. Dutrow, to have half as much as either of the three first (named children of my beloved wife dec'd) including all money due me by note or otherwise, by either of the above named parties or their husbands, which—to be deducted from their respective shares. Mrs. Margaret E. Dutrow's legacy to be held in trust for the use of the aforesaid Margaret E. Dutrow, by the trustee hereinafter named for that purpose, the said Margaret E. Dutrow to receive annually from said trustee the interest thereon at six per cent. per *an–um* during her natural life, after her death this legacy to pass to her children, equally distributed."

Although this clause is awkwardly and inartificially expressed, we should have little difficulty in ascertaining its meaning, so far as respects the persons who were intended to take as legatees, and the respective proportions in which the testator intended them to take.

The legatees named are *George W. Cromwell, Rachel C. Suman, the children of Mary Dutrow deceased, and Margaret E. Dutrow wife of George W. Dutrow;* the last named to take half as much as the others; that is to say, if the subject of disposition had been mentioned or designated in the will, or could be certainly ascertained by construction; the legatees would take in the following proportions, viz., Geo. W. Cromwell and Rachel C. Suman each *two-sevenths*, the children of Mary Dutrow deceased *two-sevenths* equally divided between them, and Margaret E. Dutrow *one-seventh*, subject to the trust as to her share, declared in the will. But the difficulty in giving effect to the clause arises from the want of some description or designation of the subject of the bequest, the omission to state what property the testator intended to give by this clause of his will.

It is contended on behalf of the appellees, that the testator intended by this clause, to give the whole residue of his estate, not disposed of by the other parts of his will, and they propose to offer parol evidence, and other proof outside of the will for the purpose of showing that such was the intention of the testator. It is very clear that such evidence is wholly inadmissible. The law requires the will shall be in writing, which must express the testamentary purpose and wish of the testator; this need not be done in a formal or technical way, but it is necessary that the intention of the testator shall be gathered from the face of the writing, it cannot be supplied by extrinsic proof. The only object and purpose for which such proof can be properly admitted, is "not to show what the testator meant, as distinguished from what his words express, but simply what is the meaning of his words." *Walston's Lessee vs. White*, 5 *Md.*, 297.

As was said by C. J., SHAW, (*in Tucker vs. Seaman's Aid Society*, 7 *Metcalf*, 205,) "the general rule certainly is, the intention of the testator is to govern, in the construction, but it is the intention expressed in the will." "Extrinsic evidence is admissible only when the will is plain and clear upon its face, and becomes doubtful when applied to the subject-matter."

"It would not be admissible to show that the testator intended to devise property which had been omitted by mistake." *Ibid.*, 206, 207.

So in *Allen's Ex'rs vs. Allen*, 18 *Howard*, 393, the Supreme Court say: "That the Court may put itself in the place of the testator, by looking into the state of his property and the circumstances by which he was surrounded at the time of making his will, is true, but this is done only to explain ambiguities arising out of extrinsic circumstances, and not to show a different intention from that the will discloses."

On this subject the decisions are uniform, a great many might be cited, but the rule is so well settled that this is unnecessary.

We refer only to *Hiscocks vs. Hiscocks,* 5 *Mees. & W.,* 383 ; *Miller vs. Travers,* 8 *Bing.,* 244, and to *Fouke vs. Kemp's Lessee,* 5 *H. & J.,* 4 ; *Cæsar vs. Chew,* 7 *G. & J.,* 127, 128, 129 ; *Walston's Lessee vs. White,* 5 *Md.,* 297 ; *Warner vs. Miltenberger's Lessee,* 21 *Md.,* 264.

We proceed to the examination of the will, for the purpose of ascertaining the intent and meaning of the *second clause,* which is silent so far as respects the property it was intended to embrace, and therefore if taken by itself it must fail for uncertainty, there being a total want of any description or designation of the property upon which it could operate.    But to discover the intention of the testator the whole will must be examined.    In *Beall vs. Holmes,* 6 *H. & J.,* 224, it is said that "the true and safe rule of construction is, that the whole of the will shall be taken together, to find out what was the object and intention of the testator at the time of making it, which where it clearly appears, no matter how irregularly expressed, ought to prevail, if when applied to the subject-matter of the devise, there are found apt or sufficient words in law to effectute that intention."

In examining the will before us, we look in vain for any words or expressions which remove the ambiguity, or cure the omission in the second clause, or which throws any light upon its construction.

The will consists of five distinct clauses, or paragraphs.

By the *first,* the testator bequeaths to his niece Catharine Thomas *sixty-six* shares of Frederick County Bank Stock.

The *second* clause is in the words before cited.

The *third,* gives and bequeaths to Joseph S. Dutrow all his undivided interest in the farm now owned and occupied by him, to have and to hold forever, also a bed with covering for the same, a secretary and wardrobe.

The *fourth*, directs certain clothing and bed clothing to be divided by three competent ladies to be appointed for that purpose by his executors hereinafter named.

This clause omits to state among whom the division is to be made.

The *fifth*, appoints executors and trustees to take charge of Mrs. Margaret E. Dutrow's *legacy* and revokes all former wills.

There is nothing on the face of the will to indicate what the testator intended to give by the second clause. We are asked to insert the words *"all the balance of my personal estate."* But by no fair construction of the will are we able to discover that such was the intent of the testator, or to determine with reasonable certainty what words were omitted.

"Conjecture cannot be permitted to usurp the place of judicial conclusion, or supply what the testator has failed sufficiently to indicate." *Wootton vs. Redd's Ex'r*, 12 *Grattan*, 206.

Words can never be supplied, except "where it is certain beyond reasonable doubt, what particular words were omitted." This is the rule as laid down by *Redfield, ch. 9, sec. 7,* and this certainty must be reached by a construction of the terms of the will, which in this case we cannot do.

We think it may be inferred from the terms of the will, that the *second* clause was intended to refer to personal property. This is sufficiently indicated by the language employed in the second clause, and by the terms of the *fifth* clause in which the share intended to be given to Mrs. Margaret E. Dutrow is called a legacy. But how much, or what part of the personal estate was intended to be embraced, is not stated, nor is there anything on the face of the will from which we are able to ascertain; and the result is that the bequest cannnot take effect.

It is settled that where the name of a legatee, or the subject of the legacy has been left *blank*, or entirely omitted

from the will, the legacy fails for uncertainty.   *Harris vs. Pue*, 39 *Md.*, 548.

It is also settled that such blanks or omissions, though they may have occurred by accident, or mistake of the draftsman cannot be supplied by parol proof of intention.

To admit such proof says C. J., TINDAL, 8 *Bing.*, 249, would be "not merely calling in the aid of extrinsic evidence to apply the intention of the testator, as it is to be collected from the will itself, to the existing state of his property ; it is calling in extrinsic evidence to introduce into the will an intention not apparent upon the face of the will.   It is not simply removing a difficulty, arising from a defective or mistaken description, it is making the will speak upon a subject on which it is altogether silent, and is the same in effect, as the filling up a blank which the testator might have left in his will.   It amounts in short, by the admission of parol evidence, to the making of a new devise for the testator, which he is supposed to have omitted."

We are of opinion that the *second* clause of the will of Peter Thomas of G., is defective by reason of the failure, or omission to state therein any property upon which the bequest can operate, and we are further of opinion that extrinsic evidence is not admissible for the purpose of showing what property was intended to be embraced therein.

The decree of the Circuit Court will therefore be reversed, and the cause remanded, to the end that the complainants may have the relief prayed for in the bill.   It is proper for us to add that the second clause of the will, is not wholly void ; but that it is valid and operative to give to the parties therein named, the amounts of the debts due by them respectively to the testator.

*Decree reversed, and*
*cause remanded.*

(Decided 29th February, 1876.)